Adelbert Moot, as Trustee, Respondent, *v.* The Business Men's Investment Association, Appellant.

1. Contract for Sale of Land — Search Furnished by Vendor — Unwarranted Rejection of Title. When, in a land contract providing for the delivery of a deed conveying "a good and satisfactory title" on a certain day, and making time of the essence, it is apparent that a provision that the vendor shall furnish a search "truly showing the condition of the title" was intended to require only a search by reference to which an ordinarily prudent person would have ascertained the true state of the

title, and such a search is furnished before the day for performance, which presents an apparent discrepancy of description, but it is accepted by the purchaser without objection, and on the day for performance the vendor actually has title and tenders a deed, and it appears that the apparent defect arose from an error of statement in a partition suit which had been amended in the judgment roll, although not on the county clerk's record, and that the purchaser had by his own negligence failed to discover the correction, he is not entitled to reject the title and recover the portion of the purchase money paid and his disbursements for examining the title, on the grounds that the vendor's title was not satisfactory and that the insufficiency of the search furnished was a breach of the contract.

2. PURCHASER PRESUMED TO INVESTIGATE TITLE. An intending purchaser of real estate must be presumed to investigate the title, to examine every deed or instrument forming a part of it, especially if recorded, and to have known every fact disclosed or to which an inquiry suggested by the record would have led.

3. SATISFACTORY TITLE. A good title must be regarded as a satisfactory one.

4. AMENDABLE DEFECT IN RECORD TITLE. Where a proffered title is actually good, and a defect in the record thereof can be supplied by reference to a corrected judgment roll on file, without resort to parol evidence or the intervention of any question of fact, and the vendor has not declined to procure the correction, the mere objection that the actual judgment was not correctly recorded does not justify the purchaser's rejection of the title.

5. TRIVIAL OBJECTION TO TITLE. The objection, by the purchaser, to performance of a land contract, that the vendor had no record title to a trifling portion, such as sixteen one-hundredths of a foot on one side of a parcel as delineated on the search furnished by him, does not justify a judgment rescinding the contract, where it appears that the objection was of little consequence, that the property had been in the actual possession of the owner having the record title for more than twenty years, that the defect was one which the vendor was able to correct, and that he did so.

*Moot* v. *Business Men's Invest. Assn.*, 90 Hun, 155, reversed.

(Argued October 19, 1898; decided November 22, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the fifth judicial department, entered October 31, 1895, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was to recover one thousand dollars purchase money paid upon a land contract, and three hundred dollars for the services of an attorney in examining the title to the premises which were the subject of purchase and sale.

The defendant, after denying many of the material facts alleged in the complaint and admitting others, set up as a counterclaim the agreement between the parties, and alleged that it had tendered performance upon its part by offering the plaintiff a good title as required by the contract, and a judgment for the amount due upon it was demanded.

On the fifth day of May, 1893, the plaintiff, representing certain clients, and the defendant, who was the owner of real estate in the city of Buffalo therein described, entered into a land contract by which the latter agreed to sell to the former certain premises on Main street that were ninety-one feet front, running through to Washington street where they were seventy feet in width. The premises were about two hundred and forty feet and eight inches south of the south line of Tupper street. The plaintiff agreed to purchase them and pay therefor one hundred twenty-seven thousand four hundred dollars, one thousand dollars to be paid upon the execution and delivery of the contract and the remainder as provided therein, the particular terms of which need not be stated. The one thousand dollars was paid. The defendant agreed, on or before the twentieth day of May, 1893, to execute and deliver to the plaintiff a good and sufficient deed containing covenants of warranty, which should convey a good and satisfactory title, " a search truly showing the condition of the title being furnished at the expense of the " defendant. It was also agreed that time was of the essence of the contract, and that it should be performed on or before the twentieth day of May. The time was, however, extended by the stipulation or agreement of the parties until the sixth day of the following June. On the fifth day of June the defendant made a tender of performance upon its part, and demanded that the plaintiff complete his contract.

Before the day of performance, the defendant delivered to the plaintiff a search furnished by the Buffalo Guaranty Company, which purported to show what appeared as to the property described in the contract upon an examination of the

indexes to the records, papers, files, documents and judgment dockets in the office of the clerk of the county of Erie from July 26, 1814, to and including December 28, 1893. Upon the first page of the abstract so furnished there was a diagram of the premises upon which the distance of parcel " A " from Tupper street was given as two hundred seventy-two and eight-twelfths feet. The twenty-third paragraph of the search showed that an action for the partition of premises which included parcel " A " and which were included in and were a portion of the premises described in the contract, had been commenced in the Superior Court of Buffalo and that a *lis pendens* was filed July 27, 1865. In paragraph twenty-four it was stated that a judgment in that action was signed July 24, 1866, and recorded in Liber 258 of Deeds, at page 383, August 4, 1866, by which parcel " A " on the diagram was allotted to Everard Palmer, an intermediate grantor, and that part of the premises was described as commencing two hundred and sixty-nine feet south of Tupper street. The plaintiff accepted the search as sufficient under the contract, and delivered it to George L. Lewis, a lawyer in the city of Buffalo, whom he employed to examine the title to the premises, and for whose services he was awarded three hundred dollars by the trial court. The distance of the premises from Tupper street was incorrectly stated in the complaint, report of the commissioners, and in the judgment in the action of partition, which was referred to in the twenty-fourth paragraph of the search. Subsequently, however, and on the eleventh day of October, 1866, the error having been discovered, upon notice to all the parties to that action, an application was made to the Superior Court for an order correcting the complaint, report of commissioners and judgment, by giving the correct distance of the premses from Tupper street, which was two hundred and seventy-two and eight-twelfths feet. That order was granted. In pursuance of it, the complaint, report of the commissioners and judgment were amended by striking out the erroneous distance and substituting the correct one. That order was

annexed to and made a part of the original judgment roll in the action, and filed in the clerk's office of the Superior Court. The original judgment was entered in the judgment book in that office, but the judgment there entered was not changed or amended, nor was the amending order recorded or filed in the Erie county clerk's office, and the record of the judgment in that office was not changed or amended. So that after the order amending the proceedings in the partition action was granted, the judgment roll contained the order, and the proceedings were amended in pursuance of it, except the entry in the judgment book and the transcript of judgment entered in the Erie county clerk's office.

*Spencer Clinton* for appellant. The plaintiff was bound to accept the tender and complete the contract. (*Vought* v. *Williams,* 120 N. Y. 253; *Folliard* v. *Wallace,* 2 Johns. 395; *Rigney* v. *Coles,* 6 Bosw. 479; *Thomas* v. *Fleury,* 26 N. Y. 26; *City of Brooklyn* v. *B. R. R. Co.,* 47 N. Y. 475; *Bowery Nat. Bank* v. *Mayor, etc.,* 63 N. Y. 336; *D. S. B. Co.* v. *Garden,* 101 N. Y. 387; *Doll* v. *Noble,* 116 N. Y. 230; *Flanagan* v. *Fox,* 6 Misc. Rep. 132.) The title offered under this contract was a marketable title free from reasonable doubt, and there was no evidence whatever to support a contrary finding. (Code Civ. Pro. § 1595; *Ferry* v. *Sampson,* 112 N. Y. 415; *Cambrelleng* v. *Purton,* 125 N. Y. 610; *Todd* v. *U. D. S. Instn.,* 128 N. Y. 636; *Holly* v. *Hirsch,* 135 N. Y. 590; *McPherson* v. *Rollins,* 107 N. Y. 316; *Kirsch* v. *Tozier,* 143 N. Y. 390; *Bernstein* v. *Nealis,* 144 N. Y. 347.) The title was a perfect one by adverse possession at the time of the making of the contract, and upon that ground the court should have decreed specific performance of the contract, and its failure to do so was an error. (*Baker* v. *Oakwood,* 123 N. Y. 16; *Jenkins* v. *Fahey,* 73 N. Y. 355; *Haffey* v. *Lynch.* 143 N. Y. 241.)

*Adelbert Moot* for respondent. As the defendant never tendered plaintiff a good title or a search showing that defend-

ant had a good title while the contract was in force, the plaintiff had a right to reject the title tendered and to recover back the money paid on the contract and his expenses in examining the title. ( *Vought* v. *Williams,* 120 N. Y. 256; *Moore* v. *Williams,* 115 N. Y. 586; *Irving* v. *Campbell,* 121 N. Y. 358; *Cambrelleng* v. *Purton,* 125 N. Y. 610; *Holly* v. *Hirsch,* 135 N. Y. 598; *McPherson* v. *Schade,* 149 N. Y. 16; *Heller* v. *Cohen,* 154 N. Y. 299.)   Defendant's point, that the title was good at the time of the trial, and, therefore, the court should have required specific performance, is not well taken, because time was of the essence of the contract, the panic of 1893 had intervened, property had materially depreciated in value, and it was, therefore, the duty of the court to refuse specific performance under such circumstances. ( *Waterman* v. *Banks,* 144 U. S. 394, 403; *Schmidt* v. *Reed,* 132 N. Y. 108; *Bank of Columbia* v. *Hagner,* 1 Pet. 455, 465, 466; *Slater* v. *Emerson,* 19 How. [U. S.] 224, 238, 239; *Jones* v. *U. S.,* 96 U. S. 24, 25, 26, 28; *Houldsworth* v. *Evans,* L. R. [3 H. L.] 263–284; 37 L. J. Ch. 800; 19 L. J. 211; 6 Eng. Ruling Cases, 516, 519, note.)   The question is also here what construction shall be put upon the will of Chandler J. Wells. ( *Tiemeyer* v. *Turnquist,* 85 N. Y. 518; *Shriver* v. *Shriver,* 86 N. Y. 575; *Dingley* v. *Bon,* 130 N. Y. 607, 614; *Hinckley* v. *Smith,* 51 N. Y. 25; *Rathbone* v. *Hooney,* 58 N. Y. 463; *Dyett* v. *C. T. Co.,* 140 N. Y. 54; *Scholle* v. *Scholle,* 113 N. Y. 261; *Fleming* v. *Burnham,* 100 N. Y. 1, 10; *Abbott* v. *James,* 111 N. Y. 673; *Kilpatrick* v. *Barron,* 125 N. Y. 751.)

Martin, J.   The right of recovery in this action is based upon the theory that the defendant was guilty of a breach of the contract between the parties, and, hence, the plaintiff is entitled to recover the amount paid thereon, together with the expenses he incurred in examining the defendant's title.   The alleged breach of the contract was based on the claim that the defendant's title to the premises was defective and not satisfactory to the plaintiff, and that the defendant could not convey a good and satisfactory title.   The plaintiff's first

objection was that the defendant had no record title to the south three feet and eight inches of the premises marked upon the diagram in the search as parcel " A." The diagram indicated that parcel " A " was sixty-five feet front by two hundred feet deep, situated on the easterly side of Main street two hundred seventy-two feet and eight inches south of Tupper street, while paragraph twenty-four of the search gave the distance south of Tupper street as two hundred and sixty-nine feet. Thus, upon the face of the search furnished, it was apparent that the distance given upon the diagram and that given in paragraph twenty-four were unlike. Hence, the attention of a reasonably prudent or careful lawyer must have been called to the fact that the diagram and description did not agree.

The principal, if not the only important, question in this case is whether there was such a defect in the defendant's title as justified the plaintiff in refusing to fulfill the contract upon his part and entitled him to recover the money paid thereon and the expense of examining the defendant's title. That the deed offered was valid and would have conveyed a good title to the premises there is no doubt. That the record in the clerk's office of Erie county did not clearly show the defendant's title to have been valid as to all the land is also true. If, under the contract, the defendant was bound to furnish the plaintiff with a search or abstract which disclosed correctly the actual condition of its title it has not been complied with. If, upon the other hand, the defendant was only required to furnish the plaintiff with a search, by reference to which an ordinarily prudent person would have ascertained the true state of the title, we apprehend there was no breach of the contract in this respect. By its contract the defendant agreed to convey a good and satisfactory title. If the title was good, and the plaintiff should have ascertained that fact, the deed tendered should be regarded as a compliance with that provision.

But it is said that the defendant agreed to furnish a search truly showing the condition of the title. It furnished a

search which, upon its face, purported to be a mere abstract of the indexes of the records in the office of the clerk of Erie county. When this was furnished the plaintiff made no objection to it on the ground of its form or insufficiency. By his acceptance he treated it as a compliance with the provisions of the contract. It is also alleged in the complaint that the search was delivered in pursuance of the contract, and no claim is made that it was in any respect insufficient. It is now too late for him to object that the search furnished was not in fact an abstract of title, or because it differed in some way from the search required by the contract. The plaintiff having accepted it without objection, could not wait until the law day had passed and then insist upon its insufficiency as a breach of the contract. If he was not satisfied with it, it was his duty to speak. Having been silent when he should have spoken, he should not, after the defendant's time to furnish a search had expired, be heard to deny its sufficiency under the contract.

This brings us to the consideration of the question whether it was the duty of the plaintiff's attorney to make such an examination as would have disclosed the true condition of the defendant's title. It is obvious that the plaintiff did not intend to and did not rely upon the search which was furnished. The evident purpose of the provision in the contract relating to that subject was to require the defendant to furnish a search which would indicate to a person accustomed to examining titles sufficient facts to enable him, by a proper examination, to ascertain the true state of the title. The defendant furnished a search which disclosed that a *lis pendens* had been filed in a partition action in the Superior Court of Buffalo ; that a judgment had been entered therein allotting a portion of the premises to one of the defendant's intermediate grantors, and that upon that judgment its title depended. The plaintiff's attorney, in examining the title, was bound to exercise the reasonable care and diligence of a good and faithful expert in that business, to ascertain the defendant's true title before the plaintiff was justified in refusing to perform

the contract upon the ground of an apparent defect in the title, when no real defect existed.   As an intending purchaser he must be presumed to investigate the title, to examine every deed or instrument forming a part of it, especially if recorded, and to have known every fact disclosed or to which an inquiry, suggested by the record, would have led.   (*McPherson* v. *Rollins*, 107 N. Y. 316, 322; *Kirsch* v. *Tozier*, 143 N. Y. 390, 397; *Bernstein* v. *Nealis*, 144 N. Y. 347.)

By the search furnished the plaintiff was apprised of the fact that the title to a portion of the premises depended upon a judgment in an action of partition entered in the Superior Court of Buffalo.   The validity of such a judgment would depend upon a great variety of circumstances, and the regularity of the proceedings in that action was important and could be ascertained only by an examination of the judgment roll.   How the plaintiff's attorney could determine that the court had jurisdiction of the action without examining the judgment roll is not apparent.   When the plaintiff was notified by the search that the defendant's title to a portion of the premises was dependent upon a judgment in partition rendered by the Superior Court, it was his plain duty to ascertain the contents of the judgment roll to determine the validity, character and extent of the judgment.   This was clearly so when, upon the face of the search furnished, it appeared that there was a conflict between the diagram and statement.

When the defendant contracted to furnish a search, and furnished one which was accepted by the plaintiff as a sufficient performance of the contract, the duty of examining and ascertaining the defendant's title rested upon him.   Instead of fully discharging that duty, through lack of diligence he failed to ascertain the defendant's actual title, but merely discovered what was once a defect in it, without making sufficient examination to find that it had been remedied.   Under these circumstances, he could not rely upon that apparent defect as a ground for refusing to comply with the contract, or as a basis for recovery against the defendant for the expenses of examining the title, when the failure to discover

the true title was caused by his own neglect.   Moreover, the justice of allowing the plaintiff three hundred dollars for his expenses in examining the title, when through lack of diligence he succeeded only in discovering a defect which had been remedied so that the title was good and should have been satisfactory, is not quite apparent.

If correctly understood, the decision of the Special Term was based upon the idea that by the provisions of the contract the plaintiff was entitled to a search which disclosed a good and satisfactory title in the defendant, and the actual condition of its title to the premises.   If that finding was justified and that question was at issue between the parties, the decision was perhaps correct.   But it is to be observed in the first place that no such issue existed, as no allegation of that kind was contained in the complaint.   The right of action alleged is based solely upon the grounds that the title to the premises · was found by the plaintiff to be unsatisfactory, and that the defendant could not convey a good and satisfactory title.   In the second place, while it is true that the language of the contract is that a search should be furnished truly showing the condition of the title, it is manifest that the parties did not intend that the defendant should furnish an abstract of title which actually disclosed all the facts that were necessary to show that the defendant's title was good.   When the defendant furnished a search which upon its face revealed that it did not and was not intended to disclose all the facts necessary to show the defendant's title, and it was accepted by the plaintiff as a compliance with the contract, it cannot be justly held that the defendant was guilty of a breach of the contract upon that ground.   Plainly it was the intention of the parties, as their acts prove beyond doubt, that the defendant should furnish precisely what it did, and that the title should then be properly examined by the plaintiff in the light of the information contained in the search, for the purpose of discovering the sufficiency of the defendant's title.   The duty rested upon the plaintiff to make a proper and thorough examination in the light of the search furnished, before he was justified in

declining to perform the contract upon the ground of the insufficiency of the defendant's title.

The provision in the contract was that the defendant should furnish a search as to its actual title, and not as to its record title. We are of the opinion that when the defendant tendered to the plaintiff a deed which would have vested in him a perfect title, he could not, under the contract and the circumstances established upon the trial, refuse to accept it and declare the contract void, as it was by reason of his own negligence that he failed to discover that the title offered was in fact valid.

But it is said that the language of the contract was that the deed should convey a good and satisfactory title. Much stress is placed upon the word " satisfactory." We think that word in no way changes the contract. A good title must be regarded as a satisfactory one. As was said by Chief Justice KENT, " Nor will it do for the defendant to say he was not satisfied with his title, without showing some lawful encumbrance or claim existing against it. * * * The law in this case will determine for the defendant when he ought to be satisfied." (*Folliard* v. *Wallace*, 2 Johns. 395, 402.) This doctrine was reasserted in *City of Brooklyn* v. *Brooklyn City R. R. Co.* (47 N. Y. 475, 479), and again in *Miesell* v. *Globe Mutual L. Ins. Co.* (76 N. Y. 115, 119). (See, also, *Rigney* v. *Coles*, 6 Bosw. 479; *Vought* v. *Williams*, 120 N. Y. 253.)

The plaintiff was entitled under his contract to a marketable title free from incumbrances and defects, and as to which there was no reasonable doubt. He was entitled to one which would enable him to hold his land free from probable claim by another, and which, if he wished to sell, would be reasonably free from any doubt which would interfere with its market value. (*Vought* v. *Williams*, 120 N. Y. 253, 257; *Shriver* v. *Shriver*, 86 N. Y. 575, 584; *Fleming* v. *Burnham*, 100 N. Y. 1.) If there had been a defect in the record title which could be supplied only by resort to parol evidence, and the title might depend upon questions of fact, the plaintiff

might not have been required to accept it. (*Irving* v. *Campbell,* 121 N. Y. 353; *Holly* v. *Hirsch,* 135 N. Y. 590, 598.)

In this case, however, when the plaintiff's title is properly examined and understood, it is manifest that, so far as this question is concerned, his title was valid and reasonably free from any doubt which would interfere with its market value, and the defect in the record could have been supplied without resort to parol evidence. Nor would any question of fact have been involved. Therefore, none of the authorities to which we have referred justified the plaintiff in claiming a breach of the contract upon the part of the defendant, as the title tendered was valid beyond reasonable doubt.

If the error in the original judgment roll had not been corrected, the plaintiff would not have been required to take action to cure it. (*Toole* v. *Toole,* 112 N. Y. 333; *Heller* v. *Cohen,* 154 N. Y. 299.) It may also be said that if the plaintiff had called the attention of the defendant to the defect in the record, and asked that it procure the judgment entered in the clerk's office of Erie county to be corrected, so as to show it as it actually existed, and the defendant had declined, he would not have been required to accept the title. But the title being actually good, we do not think he was justified in rejecting it upon the slight ground that it was not correctly recorded in that office. We are, therefore, of the opinion that the court below erred in holding that the defendant's title was defective in that respect.

The respondent also claimed that the defendant had no record title to the north sixteen one-hundredths of a foot of parcel " C," as delineated upon the search furnished by it. It is obvious, from an examination of the record, that this objection was of little consequence, and it was also clearly established that the property had been in the actual possession of the owner having the record title much longer than twenty years. This objection was not of sufficient moment to induce its consideration either by the General or Special Term. It was at most but technical and one that the defendant was able to correct, if it existed, and did so.

The only remaining objection that need be considered is the claim that the defendant acquired no title to any of the premises for the reason that under the will of Chandler J. Wells and the codicil thereto the executors had no sufficient power of sale to convey a good title even in conjunction with the owner of the life estate. The trial court found adversely to the plaintiff upon that question and that under the provisions of such will and codicil the executors had full power to sell the land in question. Upon a careful examination of those instruments we are clearly of the opinion that the Special Term was right and that this objection has no force and did not justify the plaintiff in declining to receive the title offered.

These considerations lead to the conclusion that the judgments of the Special and General Terms were incorrect and that they should be reversed and a new trial granted.

The judgments should be reversed and a new trial granted, with costs to abide the event.

All concur, except Parker, Ch. J., and Vann, J., dissenting, and Haight, J., not sitting.

Judgments reversed, etc.