JEFFERSON v. BANGS et al.

(Supreme Court, Trial and Special Term, Tompkins County.   December 18, 1913.)

1. PERPETUITIES (§ 6*)—POWER OF ALIENATION—SUSPENSION.

Testator bequeathed the use of one-third of his real estate, after the payment of his debts, to his widow, and the use of the remaining two-thirds he gave to his alleged adopted son during the life of the widow, provided he resided with and cared for her, and if he refused to do so she was to have the whole use. After her death, testator gave to the son and his wife the use of the real property during their natural life and devised the fee to plaintiff, who was their daughter, then about seven years of age. *Held* that, since the interest in the property could not be divested under any power given in the will to any primary devisee named therein, the will was not void as an undue suspension of the power of alienation.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–47, 49–53, 56; Dec. Dig. § 6.*]

2. VENDOR AND PURCHASER (§ 231*)—WILLS—PROBATE—CONSTRUCTIVE NOTICE.

The probate of testator's will in 1856 by which the fee in certain real property, after intervening life estates was devised to plaintiff, but without record thereof in the county clerk's office prior to the passage of Laws 1869, c. 748, § 1, providing that a will of real property, which has been at any time, either before or after the passage of the act, probated in the Surrogate's Court, may be recorded in the office of the clerk of any county of the state and must be within 20 days after letters are issued, did not charge a subsequent purchaser of the land with notice of plaintiff's rights.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 43, 55, 487, 513–539; Dec. Dig. § 231.*]

3. VENDOR AND PURCHASER (§ 232*)—POSSESSION OF LIFE TENANT—INTEREST OF REMAINDERMEN—NOTICE.

Where plaintiff, to whom the fee in certain real property was devised after termination of certain life estates to testator's widow and to plaintiff's father and mother, who had not lived on the property for seven or eight years at the time it was transferred to B., plaintiff having a home of her own and having only occasionally returned to the property to care for her parents in sickness, their possession of the property was not, of itself, sufficient to charge B. with constructive notice of plaintiff's interest.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 540–545, 548–562; Dec. Dig. § 232.*]

4. VENDOR AND PURCHASER (§ 244*)—BONA FIDE PURCHASER—NOTICE—EVIDENCE.

Evidence *held* insufficient to charge defendant B., a subsequent purchaser of certain real property in controversy, with notice of plaintiff's pre-existing claim to the fee under the will of her grandfather, probated in October, 1856.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 609–611; Dec. Dig. § 244.*]

———————

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. REMAINDERS (§ 17*)—RIGHTS OF REMAINDERMEN—LACHES.

Plaintiff's grandfather devised the fee in certain real property in controversy to plaintiff, after the termination of certain life estates to the widow and plaintiff's father and mother. The will was probated in October, 1856, when plaintiff was about seven years of age. It was never recorded in the clerk's office, and in 1857 plaintiff's father took an assignment of a purchase-money mortgage existing on the property and in 1861 foreclosed the mortgage, taking the title in himself. In 1868, when plaintiff was 20 years of age, her father and mother gave a mortgage on the premises to H., and in 1872 they sold the land to him, and he in 1885 sold to defendant B. Plaintiff lived on the farm with her parents until she was 29, which age she reached in 1877. She knew of her interest in the land when she was 20 years old, but no action was brought to recover the same until January, 1905, long prior to which her parents had abandoned the premises, and the property had been permanently improved. *Held*, that plaintiff was guilty of such laches as barred her right to relief.

[Ed. Note.—For other cases, see Remainders, Cent. Dig. §§ 12–17; Dec. Dig..§ 17.*]

Action by Lucy A. Jefferson against Frederick E. Bangs and others. Judgment for defendants.

See, also, 197 N. Y. 35, 90 N. E. 109, 134 Am. St. Rep. 856.

J. J. McGuire, of Ithaca, for plaintiff.
R. L. Davis, of Cortland, for defendants.

KILEY, J. This action was brought in January, 1905, by the plaintiff to recover possession of a farm of about 76 acres of land situate in the town of Groton, county of Tompkins, N. Y. The circumstances out of which this action arose are briefly as follows: In 1855 one William King purchased of one Luther Berry the farm, title of which is in question here. He gave back a purchase-money mortgage upon the farm for $1,510. At the time of this transaction there was living in the town of Homer, Cortland county, one Hastings A. King, Angeline King, his wife, and Lucy A. King, his daughter, now the plaintiff in this action. She was born in 1848. On August 20, 1856, the said William King died seised in fee simple of this farm, subject to said mortgage of $1,510. He left a last will and testament which was duly admitted to probate by the surrogate of Tompkins county. On the 29th day of October, 1856, said will was probated; his widow, Hannah King, was named as executrix therein; and letters testamentary were issued to her. The provisions of the will disposing of his property are substantially as follows: To his widow all of his personal estate and the use of one-third of his real estate and specifically included therein one-third of his house and garden, and provided that his debts and funeral expenses should be paid out of his personal estate. The use of the remaining two-thirds of his real estate he gave to said Hastings A. King, during the life of the widow, Hannah King, provided the said Hastings A. King should live with and care for said widow in a suitable manner, and, if he refused, the widow to have the whole use. After the death of said widow, Hannah King, Hastings A. and his wife, Angeline, to have the use of said real estate during their natural life, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

he gave the fee to Lucy A. King, daughter of Hastings A. King, then about seven years of age, and now the plaintiff in this action.

William King calls Hastings A. King his adopted son in his will. It appears that they were not related and that he was not adopted. Hannah, the widow of William King, died in 1860. In January, 1857, previous, Hastings A. King took an assignment of the purchase-money mortgage ($1,510) given by William King to Berry, in his own name, and in 1861 had it foreclosed and bid in the property taking title in himself. The purchase price upon said foreclosure sale was $1,200. The foreclosure was by advertisement. Service thereof was not made upon this plaintiff, who was then an infant 13 years of age. No representative, pursuant to will or by court appointment, of the estate of Hannah King, the widow of William King, was in existence. No administrator with the will annexed has ever been appointed for the estate of said William King, deceased.

Thereafter, and in 1868, Hastings A. and wife gave a mortgage on these premises to Rufus Hammond. The plaintiff was then 20 years of age, and she, with her parents, had lived upon this farm since the death of William King and was living upon it at the time of the giving of this mortgage to Hammond. She called him "Uncle," and he was some way related to the Kings. February 3, 1872, Hastings A. and Angeline King, his wife, sold this farm by warranty deed to said Rufus Hammond. The provisions in the deed show that the title was taken subject to two mortgages, one $1,600, with accrued interest from January, 1869, and one of $700 and four years' accrued interest. The purchase price named in the deed is $3,800. A paper writing signed by King and Hammond at the time shows that the mortgage indebtedness, with interest, amounted to $2,832, and that Hammond paid out of the balance to six creditors of King sums aggregating $658, and that he would pay the balance remaining to any other creditors of King within 6 months if the claims were presented to him within 90 days, and, if none, to King. On the same day he and King and wife entered into a land contract in and by which Hammond agreed to sell this farm back to King and wife for the same consideration. Terms, interest annually, and the principal in four years from the date of the contract (February 3, 1872). The deed to Hammond was recorded in the county clerk's office. The land contract was not so recorded. On the 13th day of March, 1875, the parties to the contract signed a surrender thereof, in writing, indorsed on said contract. This plaintiff lived with her parents upon this farm until she was 29 years old. She reached that age some time in 1877. So that during those various transactions she was at home on this farm. In July, 1877, Hastings A. King was examined in supplementary proceedings and there testified that he was working on Rufus Hammond's farm. In July, 1885, Hammond sold this farm to the defendant Frederick E. Bangs. Hastings A. King and his wife were still occupying the farm. The day after the sale defendant F. E. Bangs went to the farm and arrangements were made with King or consent given that King stay until the following spring. In the spring King did not vacate. The defendant Loren Bangs procured from a justice a notice

to quit and served upon King. The premises were vacated. Bangs took possession, and in March, 1901, sold to, his brother, the defendant Loren Bangs, who then took possession and is still in possession. Angeline King died February, 1901. Hastings A. King died February, 1904. Lucy King Jefferson, the daughter, brought this action within one year thereafter.

This action has been twice tried before this trial and by appeal was taken to and passed upon by the Court of Appeals. Judgment on first trial reversed. 197 N. Y. 35, 90 N. E. 109, 134 Am. St. Rep. 856. On the first trial judgment was for the defendants upon the ground that the statute of limitations had run against the plaintiff's cause of action. By this decision the Court of Appeals found that the statute had not run against the plaintiff; she having commenced her action within one year after the death of her father, the life tenant. The same decision holds that service of notice in foreclosure, upon representatives of the deceased King, was not fatal as there were no representatives of their estate. The trial court found that, at the time the defendant Frederick E. Bangs took title in 1885, he knew of plaintiff's claim, and, while he was a purchaser for value, he was not a purchaser in good faith without notice, and that, under the circumstances appearing on that trial, she was entitled to the farm upon terms that to the court should seem just. The second trial was had before Mr. Justice Coman, who died before a decision was made.

The court on first trial found that the title obtained by Hastings A. King under a sale in foreclosure of the purchase-money mortgage assigned to him was not void, but that it was voidable at the election of the plaintiff, and the Court of Appeals did not disturb that finding. It could not be disturbed if the facts warranted the other findings in the case.

[1] Upon this trial the defendants urge that the title under the will is void because the will offends against the statute limiting the suspension of the power of alienation. It will be seen, from an examination of the provisions in the will, that the interest in the property of the ulterior devisee, Lucy A. King, cannot be divested under any power given in the will to any primary devisee named therein, and hence the will is valid in that regard. Van Horne v. Campbell et al., 100 N. Y. 287, 3 N. E. 316, 771, 53 Am. Rep. 166.

[2] It was conceded by the attorneys upon the argument submitting this case that the vital question, the one of most importance, is: Did the defendant Frederick E. Bangs take title without notice, actual or constructive, of plaintiff's rights? That question was sharply contested and evidence, in favor and against, advanced from every available avenue. The plaintiff contends that the probate of the will of William King in the surrogate's office of Tompkins county, where this farm was situated, was notice to the defendant Frederick E. Bangs. The will has never been recorded in the county clerk's office of that county. That, notwithstanding the absence, under the circumstances, of the will from record in the county clerk's office, it was said defendant's duty to search there. Plaintiff cites, as authority for her contention, Wilson v. Van Epps, 38 Misc. Rep. 486, 77 N. Y. Supp. 980

In the last-cited case, as in the case under consideration, wills probated but not recorded in the county clerk's office were vital factors. The recording of wills in county clerk's offices had not been provided for by statute at the time of probate of either will. Van Epps, Sr., gave a life estate in his farm to Van Epps, Jr., expressly providing that he could not sell or mortgage the farm, and gave him power to dispose of the farm by will to his, the sons of Van Epps, Jr. Van Epps, Jr., did mortgage to the plaintiff Wilson, also did dispose of the farm by his last will and testament to his sons. After the death of Van Epps, Jr., Wilson brought the action to foreclose the mortgage. The defendants, sons of Van Epps, Jr., defended. It was tried at Special Term, and an examination of the opinion will show that the evidence in that case must have been such as to charge the plaintiff Wilson with notice, if the question was in the case. The closing paragraph, but one, of the opinion reads as follows:

"If Abraham, Jr., became the trustee to convey, in his father's stead, then the mortgagee was bound to know the limitations of that trustee and took the mortgage security at his peril"—

and cites under that proposition McPherson v. Rollins, 107 N. Y. 316, 14 N. E. 411, 1 Am. St. Rep. 826; Kirsch v. Lozier, 143 N. Y. 390, 38 N. E. 375, 42 Am. St. Rep. 729; and Moot v. Business Men's Investment Ass'n, 157 N. Y. 209, 52 N. E. 1, 45 L. R. A. 666. Plaintiff's counsel also cites those cases on his brief upon the question of notice. 107 N. Y. was decided in 1887 and was a mortgage foreclosure. The mortgage was given to secure annuities to the grandchildren of the mortgagor; the mortgagee holding title from the mortgagor. The mortgagee satisfied mortgage, and mortgagor then conveyed the premises for full consideration and without actual notice. It was held that this trust mortgage on record in the county clerk's office and the records appearing there were constructive notice. That the discharge of the mortgage was in contravention of the trust created therein. 143 N. Y. 390, 38 N. E. 375, 42 Am. St. Rep. 729, decided 1894, involved a trust mortgage. Held that the records of the county clerk's office disclosed that fact. That the satisfaction of the mortgage showed it was made before anything was due on the mortgage. That, with the other features appearing of record, put the parties upon their inquiry. 157 N. Y. 201, 52 N. E. 1, 45 L. R. A. 666, was an action to recover the amount paid on land contract and expenses for examination of title. The defect in title was difference in feet of land sold by contract and appearing of record. The search presented with a diagram in different paragraph thereof disclosed enough to put purchasers, or their attorney, on inquiry, so held. All of these cases turned upon what the record in the county clerk's office disclosed either actually or circumstances that the complaining party could not ignore with impunity.

I am led to the conclusion that the question presented in this case under this head was not up under same conditions in Wilson v. Van Epps, supra. Defendant Frederick E. Bangs had no actual notice of this will before he purchased the property. Was the record of the will in the surrogate's office sufficient to defeat his title if the purchase was

made for a valuable consideration, in good faith, and without notice? If so, then many titles stand on a very insecure basis, provided they were acquired previous to 1869, and, if so, what was to be gained by the statute of 1869 wherein it provided:

"A will of real property which has been, at any time, either before or after this chapter takes effect, probated in the Surrogate's Court * * * may be recorded in the office of the clerk * * * * of any county in the state"—

and must be in 20 days after letters are issued. Section 2633, Code of Civil Procedure, previous to 1909, derived from Laws of 1869, c. 748, § 1; section 42 of Decedents' Estate Law (Consol. Laws 1909, c. 13). Also see section 291, Real Property Law (Consol. Laws 1909, c. 50), which has been in force for many years. In Dunn v. City of New York, 205 N. Y. 342, 98 N. E. 495, it is held that constructive notice from a record depends upon whether a statute so provides, and in Taylor v. Millard, 118 N. Y. 244, 23 N. E. 376, 6 L. R. A. 667, Judge Vann, writing the opinion, says:

"The will of Elijah Millard was not constructive notice to the plaintiff because, aside from any other question, it was not recorded in the county clerk's office but in the surrogate's office only."

I hold that the probate and record of the will in the surrogate's office was not actual or constructive notice.

[3] The next question: Did the defendant Frederick E. Bangs have actual or constructive notice of plaintiff's claim from any other source? I do not think it will be contended he had actual notice from any source. The plaintiff contends that her father in possession and her guardian in socage was sufficient to put said defendant on inquiry. She was about 27 years of age in 1885 and had not lived on the farm for 7 or 8 years, had a home of her own, but occasionally returned to care for her parents in sickness. I do not think this condition imputes notice or affects said defendant's title. See Boyer v. East, 161 N. Y. 580, 56 N. E. 114, 76 Am. St. Rep. 290.

[4] Were any other circumstances existing at or before the time of defendant Frederick E. Bang's purchase, that came to his attention, which will warrant the holding that he had notice? Including in this proposition the question: Were any such as should put him on inquiry? He lived in the neighborhood in infancy, attending the Academy at Homer, miles from this neighborhood, from 14 to about 20 years of age, at home vacations, left for the West and entered college in Wisconsin, graduated, later graduated from Yale, preached and taught, and in 1885 was principal of schools in Connecticut. Home in this neighborhood during parts of summer vacations during some of the years. The family of King and the family of Bangs did not visit, never at each other's homes until after this transaction. Hammond had the title to the farm undisturbed from 1872 to 1885. It is to be presumed that Hammond told him he had a good title, for Hammond had so claimed to others besides the defendant Frederick E. Bangs. Suppose defendant F. E. Bangs had examined the record in the county clerk's office, what would he have found? A complete record title from Luther Berry down through to Hammond. The plaintiff challenges this position in one respect only, viz., that the deed from H. A.

King to Hammond contained a provision that the $700 mortgage held by Hammond should not merge by the conveyance. The claim of plaintiff is that the deed should be considered a mortgage. The mortgage was satisfied by Hammond and did not contain a trust. In Acer v. Westcott, 46 N. Y. 384, 7 Am. Rep. 355, a much stronger suggestion of hidden equities was contained in the papers. Absence of constructive notice was found by the court.

The cases cited by plaintiff and many others which have been examined on this question show that the record information and circumstances of possession were different and stronger than appear here.

[5] As to possession of King, the evidence is that King occupied under an arrangement with Hammond, and that he also made arrangements with the defendant Bangs for continued possession. The facts are not controverted. I am also of the opinion that the plaintiff knew of these conveyances and contracts with reference to this farm when they occurred. She swears she knew of her interest under the will when she was 20 years old. I am satisfied that she knew that her father and mother parted with their possession as life tenants in 1872, and that they held under contract with Hammond; that she permitted incumbrances to be paid and permanent improvements to be made while she had this knowledge and after the abandonment by her parents of their rights as life tenants; that she saw expenditures made of a greater amount than her interest in the farm; that by her conduct she was guilty of laches.

I also conclude that Frederick E. Bangs was a purchaser in good faith, for value and without notice, of plaintiff's claim.

Let findings and judgment be prepared accordingly.