DUNN v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 2, 1910.)

1. MUNICIPAL CORPORATIONS (§ 360*)—CONTRACTS—EXTRA WORK.

Plaintiff contracted with a city to pave certain streets, the contractor to excavate the subsoil to a specified depth, and if rock should be encountered, it was to be removed for at least three inches deeper. Several years before, the city had let contracts for grading the streets in question under which all rock was to be excavated to a depth of two feet below the curb line and the excavation then refilled with soft filling to the street level. Under such previous contracts, the contractors had received payment in full upon proper certificates that the work had been fully performed. Such contracts were on file as public records with the certificates showing the full performance of the work and payments therefor. When plaintiff undertook to excavate the streets, he found that the rock had, in fact, been removed to a depth of only about a foot below the curb instead of two feet and was required, over his protest, to remove the rock which should have been removed under the former contracts. *Held*, that the parties to the contract did not contemplate that the contractor would have to remove the rock which was supposedly removed under the former contracts, and the contractor, being compelled to make such excavation to perform his contract, there could be a recovery therefor as for additional work.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 892, 892½; Dec. Dig. § 360.*]

2. APPEAL AND ERROR (§ 193*)—REVIEW—QUESTIONS NOT RAISED IN LOWER COURT.

Objection made to the form of the complaint which alleged facts sufficient to sustain a recovery, not properly raised upon the trial, need not be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1226–1240; Dec. Dig. § 193.*]

Ingraham, P. J., and Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Bartholomew Dunn against the City of New York. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, MILLER, LAUGHLIN, and DOWLING, JJ.

Terence Farley, for appellant.
Montgomery Hare, for respondent.

---

McLAUGHLIN, J. In July, 1893, the plaintiff's assignor, one Mahoney, entered into two contracts with the city of New York for "regulating and paving with macadam pavement" the roadway of Eleventh avenue from Kingsbridge road to Ft. George road and the roadway of Ft. George avenue from Amsterdam to Eleventh avenue respectively. The contracts provided that the contractor should excavate the subsoil or other matter, whether earth, rock, or other material, to a specified depth, and that "if rock be encountered it shall be removed for at least three inches deeper." In 1884 the city had let contracts for "regulating and grading" the streets in question, and under those contracts, according to provisions therein set forth, all rock was to be excavated to a depth of two feet below the curb line, and the excavation then refilled with soft filling to the street level. The contractors entered upon the performance of their work, and, several years before the contracts involved in this action were entered into, received payment in full upon proper certificates that the work required by the contracts had been fully performed.

There seems to be no question but that if the contracts for "regulating and grading" these streets had been actually performed as therein required, that then the performance of the contracts in question would not have necessitated the removal of any rock, except possibly for three inches along the gutters and such slight projections of rock as might be found in other places. When Mahoney commenced work under his contracts, however, he found, upon removing the soft filling on the surface of the streets, that the rock had in fact been removed to a depth of only about a foot below the curb, instead of two feet, as required by the contracts, and he immediately protested that he was not bound, under his contracts, to remove the rock which should have been removed under the contracts for the grading of the streets; but the city authorities having supervision of the work insisted that the rock must be removed by the plaintiff before the streets were paved. In order to fulfill his contracts, therefore, he and the plaintiff, to whom he assigned the contracts while the work was in progress, were obliged to excavate and remove about a foot of rock beneath all the pavement laid. After completing the contracts, plaintiff brought two actions to recover the cost of removing this rock. Upon the trial they were consolidated, and the jury rendered a verdict in favor of the plaintiff for $37,485; the only questions submitted to them being the amount of the extra or additional work done and its value. From the judgment entered thereon and an order denying a motion for a new trial, defendant appeals.

It is not seriously disputed but what both parties to the contracts, when they were entered into, supposed that the work of grading under the prior contracts had been fully and completely performed. All of the surrounding circumstances leading up to the execution of, as well as the contracts themselves, indicate that fact. The contracts were not for "grading," but for "regulating and paving." That being so, I am of the opinion the case cannot be distinguished in principle from Horgan v. Mayor, 160 N. Y. 516, 55 N. E. 204. There, the plaintiff had contracted with the city to clean and construct a concrete bottom for a lake in Central Park. The contract provided that

the contractor should drain off the water from the bottom of the lake during the progress of the work, and it also contained a provision similar to the one found in the present contracts, to the effect that the contractor must satisfy himself as to the amount of work to be done and bear any loss or damage arising from the nature of the work or from unseen obstructions or difficulties. There was an outlet pipe in the bottom of the lake, the gate of which was visible, and which the contractor saw before he entered into his contract, through which nearly all of the water might have been drained off. When he entered upon the performance of the work, however, it was found that the pipe was obstructed so that the contractor was obliged to pump out the water and he brought an action to recover for such additional work. The Court of Appeals held that he was entitled to recover; Judge Bartlett, who delivered the opinion for a majority of the court, saying:

"The question that lies at the threshold of this case is, Did the city owe the duty to the plaintiff of having the outlet pipe of this pond in working order? * * * It was, of course, impossible when the plaintiff went upon the ground to examine the proposed work to see more than the outlet gate and the size thereof. Whether the sewer lying beyond was in a condition to carry off the water was something he could not ascertain by a mere inspection of the premises. A fair construction of the contract on this point authorized the contractor to assume that the pond could be drained of water in a general sense. There would, of course, be inequalities and irregularities on the bottom, where more or less water would remain, and which the contractor was bound to pump out and keep clear during the progress of laying the concrete work. * * * It seems to us a strained and unjust construction that would require the plaintiff, under these provisions, to remove, if necessary, the entire body of water from the pond. This latter work is a subject upon which the minds of the parties could not have met and the plaintiff in his estimates did not consider that he was called upon to pump out this great body of water lying upon an area of six acres. It was proper for the plaintiff to assume that the water of the lake could be discharged into the sewer through the outlet the city had constructed for that purpose."

The words quoted are quite applicable to the facts in the present case, except that this plaintiff, if anything, occupies a more favorable position. An examination of the streets indicated that they had been graded. The contracts for such grading were on file in the Comptroller's office, as public records with the certificates showing that the work had been fully performed, and for which the contractors had been paid in full. The plaintiff's assignor, before making his estimates, personally ascertained both of these facts. Under his contract he had the right to select his own method of ascertaining the actual work to be done, and he adopted this method. If the plaintiff in the Horgan Case was justified in assuming from the mere existence of the outlet pipe that the lake could be substantially drained through it, it seems to me more clear that the plaintiff's assignor was justified in assuming that the rock had been removed for two feet below the curb line. The contracts for the grading required it to be removed to that extent, and the public records of the city showed the contracts had been fully performed. The contract in the Horgan Case required the contractor to pump out the water from the lake, but this was held to mean simply the water that might remain in the lake owing to the

irregularities in the bottom, which could not be carried off through the drainage pipe. So, in the present case, while the contract provided for the excavation of rock, it seems to me this had reference to such rock as might be found above the two feet subgrade, owing to irregularities in its surface, or rock for three inches along the gutters. This was all the parties had in mind when the contracts were entered into. It was not then contemplated by either of them that the plaintiff's assignor would have to remove at least a foot of rock which then supposedly had been removed under the grading contracts. This was a subject on which their minds did not meet, but the plaintiff, in order to perform the contracts in question, was compelled to excavate this rock, and that was work entirely outside of the contracts and unaffected by their provisions.

I am of the opinion that the plaintiff was entitled to recover for this additional work, and since its performance was not controverted, the only questions for the jury, as the trial court held, were the amount of such work and its value.

Objection is made to the form of the complaints but they allege facts sufficient to sustain the recovery. It is not necessary to determine the exact form of the action, because it does not appear that the question was properly raised upon the trial, or that the defendant was misled or prejudiced in any way on that account. Neither were there any errors committed calling for reversal.

The judgment and order appealed from must, therefore, be affirmed, with costs.

MILLER, and DOWLING, JJ., concur.°

INGRAHAM, P. J. (dissenting). The cause of action, as stated by the respondent is "an action in quantum meruit for the reasonable value of rock excavation as damages for the breach of the paving contracts arising from the wrongful direction of the defendant, its officers and agents, requiring the plaintiff's assignor and the plaintiff to excavate rock which was not included in the terms of the paving contracts." To sustain this cause of action the plaintiff must first prove a breach of the contract by the defendant, and that the damage arising from that breach was the cost to the plaintiff of making the rock excavation, for which he has recovered. It is difficult to see how there could possibly be a breach by the defendant of its contract which would entail upon it a liability for the costs of excavating the rock, unless somewhere in the contract there was an obligation imposed upon the defendant to excavate this rock which the plaintiff did excavate.

The plaintiff seems to eliminate any cause of action based upon an additional contract, either as extra work under the contract executed, or upon the theory that the directions of the defendant's officers to excavate this additional rock was a new and independent contract; but it is quite evident that upon neither of these theories would the plaintiff be entitled to recover.

It is a principle universally established that "in cases of public agents the public corporation is not bound unless it manifestly ap-

pears that the agent is acting within the scope of his authority.
* * * And it is a general and fundamental principle of law that
all persons contracting with a municipal corporation must at their
peril inquire into the power of the corporation or of its officers to
make the contract; and a contract beyond the scope of the corporate
power is void, although it be under the seal of the corporation.
* * * So, also, those dealing with the agent of a municipal cor-
poration are likewise bound to ascertain the nature and extent of his
authority. This is certainly so in all cases where this authority is
special and of record, or conferred by statute. The fact that in such
a case the agent made false representations in relation to his authority
and what he had already done, will not aid those who trusted to such
representations, to establish a liability on the part of his corporate
principal. Dillon's Municipal Corporations (4th Ed.) vol. 1, §§ 449,
447. In section 449 it is further stated that when the mode of con-
tracting is specially and plainly prescribed and limited, that mode is
exclusive and must be pursued, or the contract will not bind the cor-
poration; and this principle as laid down by Judge Dillon has been
many times applied and has become the settled law of this state.

Now, the charter of the city of New York expressly limits the
power of the corporate officers to make any contract, except one
based upon proposals which have been duly advertised, and then the
contract must be made to the lowest bidder. Section 419, c. 466,
Laws 1901. It is not claimed that there was any contract made for
excavating this rock, based upon such bids as the charter requires,
unless it was included within the contract actually made between the
plaintiff's assignor and the defendant, and under which the work in
question was performed. The city of New York was not, therefore,
liable to the plaintiff for any work done under the contract, except
for the amount expressly agreed to be paid to the plaintiff's assignor
by its terms; nor can there be any liability for extra work under this
contract, as that would be a violation of the charter provisions and in
violation of the express provisions of the contract.

It would seem, therefore, that the plaintiff was quite correct in
basing his sole right to recover upon an alleged breach by the de-
fendant of some provision of the contract, and to recover damages for
a breach of the contract, it would seem to be essential that such a
breach should be established by the evidence.

Now, the city of New York, wishing to pave Eleventh avenue from
Kingsbridge road to Ft. George road with macadam pavement, and
in pursuance of an ordinance of the city of New York it issued to
contractors proposals for bids "For regulating and paving with mac-
adam pavement the roadway of Eleventh avenue from Kingsbridge
road to north curb line of Ft. George road." It will be noticed that
these proposals started out with the statement that the work to be
done was "regulating and paving." The proposal then recited the
ordinance of the common council, and provided that the "estimates
of the above work indorsed with the above title, also with the name
of person or persons making the same, and the date of presentation,
will be received at the office of the department of public works, until
12 o'clock m., of Tuesday, June 13, 1893, at which place and hour the

bids will be publicly opened by the head of said department and read, and the award of the contract will be made to the lowest bidder with adequate security, as soon thereafter as practicable." It was further stated in the proposals that "bidders will state in writing, and also in figures, the price per square yard for the new pavement; also the number of days required to complete the work"; that "these prices are to cover the furnishing of all the necessary materials and labor; also necessary preparation of the foundation; also the necessary re- adjustment of all the curbstones, and the performance of all the work required by the contract set forth in the specifications and form of agreement hereto annexed." The surveyor's estimate of the work to be done was then inserted with the following proviso:

"As the above-mentioned quantities, though stated with as much accuracy as is possible in advance, are approximate only, bidders are required to sub- mit their estimates upon the following express conditions, which shall apply to and become part of every estimate received.

"(1) Bidders must satisfy themselves by personal examination of the loca- tion of the proposed work, and by such other means as they may prefer, as to the accuracy of the foregoing estimate, and shall not, at any time after the submission of an estimate, dispute or complain of such statement or estimate of the engineer, nor assert that there was any misunderstanding in regard to the depth of the excavation to be made, or the nature or amount of the work to be done. * * * No extra compensation beyond the amount payable for the several classes of work before enumerated which shall be actually per- formed, at the prices therefor to be specified by the lowest bidder, shall be due or payable for the entire work. * * * Work or materials not specified and for which a price is not named in the contract, will not be allowed for."

This proposal for bids was signed by the Commissioner of Public Works; and annexed to this proposal was a form of contract with blanks to be filled in with the name of the bidder to whom the con- tract was awarded and the price to be paid for the work.

In reply to this proposal the plaintiff's assignor submitted a bid which was accepted and the contract duly executed. By this contract dated the 29th day of July, 1893, the plaintiff's assignor agreed, for the consideration thereinafter mentioned, to furnish and provide, at his or their own proper costs and expense, all the necessary materials and the labor and in a good, firm, and substantial manner, and strict- ly in accordance with the following specifications, regulate and pave with macadam pavement the roadway of Eleventh avenue, from Kings- bridge road to North curb line of Ft. George road; and also lay and relay crosswalks; "all the said work to be done in the manner and under the conditions hereinafter specified." The contract further pro- vided that the contractor will not at any time "dispute or complain of such statement, nor assert that there was any misunderstanding in regard to the depth of the excavation to be made or quantity of filling that may be required to place the pavement upon the required grade, or the nature or amount of the materials to be furnished or work to be done; and he covenants and agrees that he will complete the en- tire work to the satisfaction of the commissioners of public works and in substantial accordance with said specifications, and that he will not ask, demand, sue for, or recover for the entire work, any extra compensation beyond the amount payable for the several classes of

work in this contract enumerated, which shall be actually performed, at the prices therefor herein agreed upon and fixed." Included in the contract were the specifications for the doing of the work which contained the following provisions:

"In case there shall be, at the time stipulated for the commencement of the work, any earth, rubbish, or other incumbrance on the line of the work, the same is to be removed at the expense of the contractor."

And, further:

"Preparation of Road, etc.—All paving and other stones necessary to be removed shall be taken up and immediately removed from the line of the work; the subsoil or other matter (be it earth, rock or other material) shall then be excavated and removed by the contractor to such depth that when properly shaped and rolled it shall be sixteen inches below the surface of the broken stone when completed, irrespective of the finishing material, and sixteen inches below the surface of the stone pavement or new lines of bridge stones. If rock be encountered it shall be removed for at least three inches deeper. * * *

"The roadbed shall be truly shaped and trimmed to the required grade and with such crown as shall be directed, by the water purveyor, and rolled to ultimate resistance with a roller weighing not less than ten tons where practicable, until the surface is firm and compact, and if the material will not admit of satisfactory rolling, such material must be removed by and at the expense of the contractor, and proper material substituted. * * * * * * * * * * * * * *

"Depth of Pavement.

"The pavement, when completed, shall be, when practicable, at each point of such construction, at least of such a depth as required by the specifications and of such crown and such form of gutter as shall be directed, and in any case the thickness of the pavement is to be determined on a line at right angles to the grade and crown."

The plaintiff's assignor further agreed that he would obey and conform to all ordinances of the corporation of the city of New York then in force, or that might be in force, during the progress of such work in relation to blasting rocks in the streets and avenues of said city; and further agreed:

"To receive the following prices as full compensation for furnishing all the materials and performing all the labor which may be required in the prosecution of the whole of the work to be done under this agreement, and in all respects performing and completing the same, to wit, for the new pavement per square yard the sum of ($1.95) one dollar and ninety-five cents; for furnishing and laying new bridge stones, per square foot, the sum of (65¢) sixty-five cents. It being expressly understood that the measurements shall be taken after the laying or settling of the pavement and bridge stones, and that the aforesaid prices cover the furnishing of all the different materials and all the labor, and the performance of all the work mentioned in this specification and agreement."

The contract having been executed and the plaintiff's assignor having assigned this contract to the plaintiff, the plaintiff proceeded with the work. After commencing the work it was found that the proper performance of the contract required the excavation of certain rock underneath the surface of the street as it had been before regulated and graded. The plaintiff protested against being compelled to ex-

cavate this rock under the contract, but was informed by the city authorities that he had to excavate the rock, as it was necessary to properly prepare and lay the pavement. The plaintiff then proceeded to excavate the rock and properly perform his contract, for which he received the contract price, and then brought this action to recover for the reasonable value of the rock excavated.

The plaintiff does not specify what particular clause of this contract the defendant failed to perform, and I can see in the contract no duty assumed by the defendant which it has not fully performed. There was no representation made in the contract as to whether or not excavation of rock would be necessary, and by the contract the plaintiff's assignor in express terms undertook to remove such rock as should be found necessary to lay the pavement as required by the contract. There were no representations by the city or by its responsible officers that no rock would be found, or that required the city to do any work which was necessary to prepare for the proper paving of the avenue. The plaintiff says that he was intrusted by his assignor to make the preliminary examination necessary for putting in a bid; that he visited the locality, examined the surface of the existing avenue, and that he then found that a number of years before that there had been a contract made for regulating and grading this avenue. He examined the contract for such regulating and grading, and found that it required the excavation of rock upon the line of the avenue to such a depth that if that contract had been properly performed no rock excavation would have been necessary. He then examined the certificate of the then commissioner of public works, and found that he had certified that the contract had been performed and thereby assumed that all rock had been excavated; and it was based upon this examination of that contract and the certificate of the responsible city officers that the contract had been performed that he assumed that no rock excavation would be necessary, and, therefore, submitted the bid in question.

In the proposals for this work which included by express terms regulating and paving of this avenue, there was no mention made of the former contract; nor was this contract in any way based upon any assumption by the city or its officials that that other contract had been performed in accordance with its terms; and we may assume that the city had been defrauded by the official who had certified that the former contract had been performed, when it had not, and had there paid to the contractor a sum of money to which he was not entitled; but I cannot see how that can possibly affect the right of the city to require of the plaintiff or his assignor to perform this contract. There was no representation made by the city to this plaintiff nor his assignor that that contract had been completed according to its terms. There was no presumption that the former officials who had charge of the work under that contract had properly performed their duty, so as to affect the obligation of the plaintiff or his assignor in the performance of this contract. When this proposal was received there was a distinct statement in it which, by its terms, became a part of the contract, that the bidder must satisfy himself, by personal exam-

ination of the location of the proposed work, and by such other means as he might prefer, as to the accuracy of the foregoing estimate and should not, at any time after the submission of an estimate, dispute or complain of such statement or estimate of the engineer, nor assert that there was any misunderstanding in regard to the depth of the excavation to be made, or the nature or amount of the work to be done; and it was further expressly agreed that no extra compensation, beyond the amount payable for the several classes of work enumerated which should be actually performed, at the prices therefor to be specified by the lowest bidder, shall be due or payable for the entire work; and that work or materials not specified and for which a price is not named in the contract will not be allowed for. He also expressly agreed that there was not any misunderstanding in regard to the depth of the excavation to be made or quantity of filling that may be required to place the pavement upon the required grade, or the nature or amount of the materials to be furnished or work to be done; and he covenanted and agreed that he would complete the entire work to the satisfaction of the Commissioner of Public Works and in substantial accordance with said specifications, and that he would not ask, demand, sue for or recover for the entire work any extra compensation beyond the amount payable for the several classes of work in the contract enumerated which should be actually performed at the prices agreed upon; and he further agreed that the subsoil or other matter, be it earth, rock, or other material, should be excavated and removed by the contractor to such depth that when properly shaped and rolled it should be 16 inches below the surface of the broken stone when completed, irrespective of the finishing material, and 16 inches below the surface of the stone pavement or new lines of bridge stones; and that if rock should be encountered, it should be removed for at least 3 inches deeper.

Thus, the parties had in contemplation, when the contract was made, the contingency of rock excavation being necessary to enable the pavement to be laid as provided for by the contract, and it was expressly agreed that should such rock excavation be necessary, it should be made by the contractor at its own expense. Where, in this contract, is there one provision which either expressly or by implication, provides that the defendant should be under any obligation to remove any rock that should be found, or any representation or statement that any rock had been removed so that the pavement could be laid without excavation? There was no provision by which the city expressly agreed to do anything in regard to this avenue to prepare it for the laying of this pavement. There can be, as I see, no implied obligation to perform such work, but it seems to me that this rock was, by the express agreement of the parties, to be removed by the plaintiff as a part of the work that he had to perform, and that there was absolutely no breach of contract by the defendant which could possibly give the plaintiff a cause of action. The plaintiff, however, says that whatever the technical features of the action may be, he submits that the allegations of the complaint and the facts proved upon the trial support the judgment appealed from under a line of

cases cited by him of which Horgan v. Mayor, 160 N. Y. 516, 55 N. E. 204, seems to be the leading case; and that case, as I understand it, is relied upon in the prevailing opinion to sustain this judgment. That case was brought by the plaintiff against the city to recover for extra work performed by the plaintiff under a contract between himself and the city. The Court of Appeals stated that they were of the opinion that the city had, by a general release, released all claim except such as he might have, if any, for extra work not covered by the contract; and the court considered the case only to be a claim for extra work. The contract in that case provided for draining off the water from a pond in the Central Park and providing for a new bottom for the pond. The contract provided that the plaintiff was to furnish all labor and materials required for conducting the flow of water through or across the area of the pond, to the outlet, or for draining water from any portion of the area and all.pumping or bailing required for the proper prosecution of the work during its progress and until its completion. After the contract was executed the plaintiff requested the city authorities to draw off the water from the pond, and thereupon the circular gate resting upon the bottom was opened and the water was drawn down to a depth of 14 inches, when the outlet pipe ceased to work. It was then ascertained that the pipe or sewer was very seriously obstructed, and that unless the same was cleared out, no further water could be drawn from the pond, the engineer insisting that the plaintiff should remove the water from the pond, and the plaintiff erected his pumps and proceeded to do the work of pumping, claiming, however, that it was no part of his contract, and that the city must pay him for it as extra work; and the court there held that the question was, "Did the city owe the duty to the plaintiff of having the outlet pipe of this pond in working order?" and the court held that under a reasonable construction of the contract the contractor had a right to assume that the pond could be drained of water in a general sense; that the contract did not contemplate the contractor pumping out the water of the lake in a general sense; and that the city having failed in the performance of this implied obligation, upon the faith of which the contract was made, the contractor was entitled to recover for the additional expense caused to him in pumping out the water. So far as the record shows, there was no express provision in this contract that the plaintiff could not recover for extra work, but whether that is so or not, an examination of the case, it seems to me, discloses that the recovery was allowed as extra work made necessary by the failure of the city to perform its obligation under the contract, namely, of providing an outlet for this water which would be sufficient to drain the pond. There is, certainly, as I view it, nothing in this case that could have any application to the claim recovered on by the plaintiff in this action.

The plaintiff also cites the case of Gearty v. Mayor, 171 N. Y. 61, 63 N. E. 804. In that case the plaintiff alleged that he had proceeded under his contract so that he was entitled to a payment due him of upwards of $7,700 as he was ordered by the engineer of con-

struction to take up this work and relay it. In that case each party charged the other with a breach of the contract, the city insisting that the work was improperly done, the contractor insisting that the work was properly done; that the plaintiff could have then stopped the work and stood upon his contention that the work had been properly done and brought his action to recover for the labor and materials furnished under the contract, but the contractor having complied with the direction of the city authorities and did over the work, the question was whether the second remedy was open to the contractor to do the work required by the commissioner and subsequently recover for such work which he was unjustly and improperly required to perform. The court held that he had such an option, and that he could recover upon the theory that it was damages caused by a breach of the contract, and in that case there was a breach of the contract if the work had been properly performed in the first instance, in refusing to pay what was then due on the contract, so that the contractor was entitled to the payment which, if the contract had been properly performed, was then due. Thus, in that case as in the Horgan Case, there was held to be a breach of the contract by the city, and the action could be sustained as an action for damages to recover for that breach. Here, as before stated, there was no clause of the contract which the city did not perform, no breach of the contract by the city in any aspect, no violation of any of its terms by the defendant or by its officers. There was only a demand that the plaintiff should comply with his contract and perform the work that he had agreed to perform, and, he, though protesting, complied with that demand and did the work called for by the contract, and for that he has received the amount the city promised and agreed to pay.

I think there is no theory upon which this action can be sustained; no act of any of the city authorities for which the city can be held liable; no contract or agreement by which the plaintiff is entitled to receive any sum of money, except that already paid him, and no possible theory, that I can see, upon which the plaintiff can recover.

There is presented the rather unusual case of a person having made a contract with the city which, because of a misapprehension on his part as to the extent of the work to be done, has involved him in a loss; but the judgment must be satisfied with money raised by taxation. It cannot be affirmed, in my opinion, without breaking down the rules which are firmly established to protect municipal corporations from unjust claims made against them, rules which are perfectly familiar to every one making a contract with a municipal corporation, and which are necessary for the protection of the public; and the courts have, I think, no right to give to a contractor who has made a mistake in making a contract, an additional payment for the work that he has agreed to do when that money is to come out of the public treasury and ultimately must be supplied by taxation. The plaintiff knew perfectly well the obligations that he assumed. He entered into this contract upon an assumption, not based upon anything that the city or any of its officers said or did, but upon his examination of the work that he had to do, and because that assumption

turned out to be incorrect is no justification for imposing upon the city an additional burden from that provided for in the contract itself.

I think, therefore, that no cause of action was alleged or proved, and that the judgment should be reversed and a new trial ordered.

LAUGHLIN, J., concurs.