UVALDE ASPHALT PAVING CO. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   December 20, 1912.)

1. MUNICIPAL CORPORATIONS (§ 352*)—STREET IMPROVEMENTS—CONSTRUCTION OF CONTRACT.

The bid, contract, and specifications for a street improvement were entitled "bid," etc., as the case might be, for "regulating, grading, curbing and repairing," etc., and each contained many items of various kinds of work necessary either in laying original pavements or repairing. The printed description of the work in the specifications made it to consist of "regulating and grading the entire street (or if the street is already paved of removing or readjusting the old pavement)," but the only items on which bids were asked were for completed asphalt pavement, for concrete, and for furnishing and setting new concrete curbs, and the items for "earth excavations" and "earth filling," for which spaces were provided in the printed forms, were left blank. There was no plan on file in the bureau of highways, though there was an incomplete plan in the county clerk's office.  *Held*, that the contract did not contemplate the doing of a substantial amount of earth excavation in regrading.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 883, 884; Dec. Dig. § 352.*]

2. MUNICIPAL CORPORATIONS (§ 360*)—CONTRACTS—STREET PAVING—EXTRA WORK.

Where a street paving contractor was ordered by the city engineer to regrade the street, not required by the contract, and the work of regrading was done under protest, the contractor could recover for excavating and regrading.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 892, 892½; Dec. Dig. § 360.*]

Ingraham, P. J., dissenting.

Appeal from Trial Term, New York County.

Action by Uvalde Asphalt Paving Company against the City of New York. From a judgment for plaintiff and an order denying a new trial, defendant appeals.   Affirmed.

See, also, 149 App. Div. 491, 134 N. Y. Supp. 50.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Terence Farley, of New York City, for appellant.

Leo C. Rosenblatt, of New York City, for respondent.

SCOTT, J.   The plaintiff sues for damages measured by the value of work which he was required to do as an incident of his contract

for repaving Cypress avenue in the borough of Queens. The value of the work done is not in dispute, the only question being as to his right to recover at all. The street to be repaved was an ancient road which had been worked for many years at its natural level and had been first a plank road, and afterwards a macadamized road. The repavement was rendered necessary because the macadam had fallen into disrepair. In the course of the work the contractor was required to partially regrade the street which called for an amount of earth excavation. It is for this excavation that plaintiff has recovered. We think that it is quite clear that the grade of the street had never been legally changed when the contract was executed, and that regrading was not called for by the contract and not within the contemplation of the parties when the contract was executed.

[1] The bid, contract, and specifications were evidently made upon printed forms intended to apply to cases of either original paving or repaving. They are entitled "bid" or "contract" or "specifications," as the case may be, for "regulating, grading, curbing and repairing," etc., and in each of them are a large number of items of various kinds of work such as might be encountered either in laying an original pavement or in repaving. The printed description of the work in the specifications prescribes that it shall consist of "regulating and grading the entire street (or, *if the street is already paved of removing or readjusting the old pavement  *  *  *)."*

The only items upon which bids were asked were: (a) For completed asphalt pavement; (b) for concrete; and (c) for furnishing and setting new concrete curbstones. The items for "earth excavation" and "earth filling," for which spaces were provided in the printed forms, were left blank; no bids being either asked or given as to them. The contract, in its printed part, referred to "a plan now on file in the Bureau of Highways." There was no such plan on file in that bureau, but there was on file in the county clerk's office a somewhat incomplete plan which had been made by the borough president in 1903, and approved by the board of estimate and apportionment. This plan purported to show the natural grade of the street, and also an altered grade, and the work for which plaintiff now seeks compensation consists in bringing the natural grade to the altered grade shown on this map.

From the circumstances above detailed we think that it clearly appears that it was not contemplated by either of the parties when the contract was made that the work would include a substantial amount of earth excavation of which no estimate was made and for which no bid was asked, and the necessity for which excavation was not shown on any map or plan on file in the Bureau of Highways. The defendant insists that it was the duty of the contractor to consult the map on file in the county clerk's office before making his bid. We do not so consider. In view of the facts that the street was already paved, that the contract was only for repaving, that no item was specified in the proposal or specification which would be appropriate to regrading, and that there was no plan on file in the borough president's office, the contractor was quite justified in assuming that

the street was to be repaved at its then existing grade and to make his bid accordingly. It is at least open to question whether the map or plan signed by the president of the borough in 1903 and approved by the board of estimate and apportionment was effectual to change the grade of Cypress avenue, which was an ancient street or road laid out and worked at the natural grade. Section 441 of the Charter of 1901 (chapter 466) provided that:

"Whenever any street in the city of New York shall have been used as such for more than twenty years (as Cypress avenue had been) without having the grade thereof established by law, the level or surface of said street shall be deemed to be, and to have been the grade thereof."

There is no evidence that the grade of Cypress avenue had ever been legally established, otherwise than at the natural grade, before the adoption of the Greater New York Charter. After that time the grade could be changed only in the manner provided in 442. It is not claimed that, when the contract in suit was executed, the grade had been so changed. The result is that the work of regrading was not included in the contract.

[2] It was shown that the work of regrading was ordered by the engineer and executed under protest on behalf of the contractor that it was in excess of the requirements of the contract.

Upon these facts we are of opinion that the plaintiff is entitled to recover upon the rule laid down in Borough Const. Co. v. City of New York, 200 N. Y. 149, 93 N. E. 480, 140 Am. St. Rep. 633. In that case, as in this, the contractor claimed compensation, by way of damages, for a breach of his contract in that he was required to do work not covered by the contract. The Court of Appeals said:

"The learned counsel for the appellant with considerable insistence advances arguments applicable to an action brought to recover on contract for extra services and materials and leading to the conclusion that such recovery cannot be permitted because such materials and work were not called for or authorized in the manner prescribed by the contract. Of course, on the premises formulated by counsel on this theory his conclusions are unimpeachable; but the answer to the entire argument is that this action does not rest on any claim for extra services or materials under the contract, but on an alleged breach of the contract by the city and its representative whereby the respondent has suffered damages, and the question is whether the action can be maintained on that line.

"I regard it as settled that it may; that within certain limits a contractor who is ordered by the proper representatives of the municipality to furnish materials or do work as covered by his contract which the former thinks are not called for by such contract may under protest do as directed and subsequently recover damages because he has been so required, even though it should turn out that the contractor was right and that the official had no right to call on him to furnish such materials and do such labor. Decisions of this court have so conclusively established the principle that under such circumstances the contractor may treat the conduct of the municipality acting through its representative as a breach of contract and recover damages; that it is only necessary to summarize these without argument."

The court cited in support of its view Gearty v. Mayor, etc., 171 N. Y. 61, 63 N. E. 804; Lentilhon v. City of New York, 102 App. Div. 548, 92 N. Y. Supp. 897, affirmed 185 N. Y. 549, 77 N. E. 1190; People ex rel. Powers & M. Co. v. Schneider, 191 N. Y. 523,

84 N. E. 1118. The defendant places much reliance upon Dunn v. City of New York, 205 N. Y. 342, 98 N. E. 495, adopting the dissenting opinion of Ingraham, P. J., in 141 App. Div. 280, 126 N. Y. Supp. 61. In that case a contractor for regulating paving Eleventh avenue in the city of New York, had expressly contracted to remove, where necessary, the subgrade rock, and was warned by the terms of the proposal that the engineer's estimate of the amount of rock to be removed was only tentative, and that the bidder must satisfy himself upon that point. It turned out that there was more rock to be removed than had been estimated either by the engineer or the contractor. The latter sought to recover the amount of the expense incurred in removing the unexpected rock. It was held that he could not recover. That case differed from the present in two important respects. In the first place, the contractor sued as for work done under the contract; and, in the second place, he had expressly contracted to remove whatever rock was necessary, and had been compelled to do more than he expected only because he had failed to take effective steps to inform himself before bidding as to how much rock he would be called upon to excavate.

The judgment and order appealed from must be affirmed, with costs.

LAUGHLIN, CLARKE, and MILLER, JJ., concur.

INGRAHAM, P. J. (dissenting). On the 23d of October, 1906, the plaintiff made a contract with the defendant whereby it agreed to furnish all labor and materials at its own cost and expense necessary or proper for the purpose and in good substantial workmanship manner and in strict accordance with the specifications therein contained or attached, regulate, grade, and pave or repave with asphalt pavement on the designated foundation and roadway of Cypress avenue from Gates avenue to borough line in the Second ward in the borough of Queens, and set and reset such curbstones, heading stones, etc., as may be necessary, and maintain said pavement for five years from the final completion and acceptance thereof. The contract also provided that to prevent all disputes and litigation the engineer shall in all cases determine the amount or the quality of the several kinds of work and material which is to be paid under this contract, and shall determine all questions in relation to the work and materials and construction thereof, and he shall in all cases decide every question which may arise relative to the execution of this contract on the part of the contractor. His estimate and decision shall be final and conclusive, and such estimate and decision, in case any question shall arise, shall be a condition precedent to the right of the contractor to receive any money under this contract. It was also provided that the contractor should receive certain specific prices as full compensation for furnishing all the material and performing all the labor which may be required in the prosecution of the whole work in all respects performing and completing the same; that "in case the grade of the street shall be changed during the progress of the

work the contractor will conform to the altered grade at the prices specified herein as far as they are applicable, and for any work the price of which is not specified in this contract the provisions heretofore contained in relation to the work not provided for in this contract shall apply." By the specifications it was provided that the work should consist of regulating and grading the entire street, or, if the street is already paved, removing or readjusting the old pavement, settling and resetting curbs and sidewalks wherever required, and laying asphalt pavement; that all materials of every description, earth, rocks, subsoil, vegetable or other matter, brick and stone masonry overlaying the subgrade hereafter described, should be removed and the roadway and sidewalks freed from all stones and shaped as shown on the plans; that the excavation should be carried to the established grade and the sidewalk slope upwards from the curb grade towards the house lines, the embankments should be brought up to the designated grades, and various provisions were made as to the disposition of materials necessarily excavated; that all excavations and materials necessary for the construction of the curb should be included in the price bid per linear foot for the cement concrete curb.

It was admitted on the trial that the plaintiff performed the contract and completed the work, and the same was certified by defendant's engineer by a final certificate, and that the plaintiff has received the full compensation provided for by the contract. At the completion of the contract the plaintiff duly presented to the defendant a claim for additional compensation for earth excavation, which claim was rejected by the engineer, the borough president, and the corporation counsel. This contract was executed October 23, 1906.

The plaintiff called the engineer for the city, who produced a plan and profile of Cypress avenue dated May 13, 1907, although the engineer did not assume charge of the work until September, 1907. That map showed what was claimed to be the official grade of Cypress avenue. It seems that there had been no profile of this street filed in the office of the borough president prior to the execution of the contract. There had been, however, a map of this avenue made by the president of the borough of Queens and filed in the office of the county clerk of Queens county in 1903, and this profile map made in 1907 appears to conform to that map which was the only map showing the profile of this Cypress avenue, and then to be paved, and the profile on that map was formally adopted by the board of estimate and apportionment in 1903. The lines on the original profile map adopted by the board of estimate and apportionment in 1903 and filed in the county clerk's office were in some respects different from the actual grade of the street as it had been in use before that time for many years. The engineer for the city directed the plaintiff in performing this work to adopt the lines as shown on this map and on the map made in May, 1907. It seems that this avenue was originally an old plank road incorporated May 15, 1851, and the name was changed to the Cypress Hill Macadam Road under the authority of chapter 375 of the Laws of 1859. It was abandoned by this turnpike company March 7, 1881, and from that time on was maintained

at the grade at which the street actually was before the commencement of this repavement. Defendant's counsel then stipulated that the defendant told plaintiff that it had to do that work according to this profile map furnished by the department, that plaintiff protested against doing it, that defendant stated it was called for by the contract, and that the plaintiff then did the work as required by the defendant and was paid the contract price therefor.

It was further conceded that the matter was referred to the corporation counsel,· who said that the contract called for this work and that the plaintiff would have to do it and that the compensation agreed upon in the contract would be full compensation for this work. A letter was then introduced dated July 2, 1907, from the president of the borough to the plaintiff stating that plaintiff was in default on the work and directing it to proceed immediately. There was another communication dated September 27, 1907, referring to a charge for excavation made necessary by the change of grade, stating that the matter had been referred to the corporation counsel and notifying plaintiff to proceed with the contract immediately. Acting under this direction from the engineer in charge of the work, the plaintiff did the work necessary to conform to this map which was on file in the county clerk's office, which was the only map in existence which stated the grade of the work, and, having received the amount specified in the contract to be paid for the paving, commenced this action to recover for the extra work that he did in reducing the avenue to the grade as· it appeared upon this map. The parties then rested, and the defendant moved to dismiss the complaint on various grounds. That motion was denied. The court then submitted the questions to the jury as to the reasonableness of the value of the excavation of 1,457 cubic yards of dirt. The jury assessed the value of that excavation at $874.20, and upon that assessment the court directed a verdict for the plaintiff. There was no request to submit any other question to the jury.

There was here a map which had been approved by the board of estimate and assessment establishing the grade of this avenue, and it was the only map in existence that had any connection with the grade. To properly bring this avenue to the grade, some excavation was necessary, and that the city engineer held was the grade at which the plaintiff was required under his contract to lay the pavement. The corporation counsel so directed, and plaintiff obeyed such direction. As extra work it seems to be conceded that the plaintiff cannot recover. Dunn v. City of N. Y., 141 App. Div. 280, 126 N. Y. Supp. 61; Id., 205 N. Y. 342, 98 N. E. 495. The contract in that case was substantially similar to that in this case, and I think in this contract, as under the contract in the Dunn Case, plaintiff was required to remove any earth that was necessary to bring this avenue to the grade at which the pavement was to be laid. The prevailing opinion is based upon the case of Borough Construction Co. v. City of New York, 200 N. Y. 149, 93 N. E. 480, 140 Am. St. Rep. 633. That case involved the construction of a sewer, and the opinion in that case examined the previous cases in the Court of Appeals and laid down

the rule which was to apply in actions of this character. After dis-cussing the question, the court said: .

"The underlying justice of the principle is that where a municipal repre-sentative having authority to speak for it and supposed to be familiar with such matters, in apparent good faith and with a show of reason, requires a contractor to do certain things as covered by his contract, the contractor, although protesting against the requirement, ought not to be compelled to refuse obedience and incur the hazard of becoming a defaulter on his con-tract even though it shall subsequently turn out that he was right and the municipal representative wrong in the dispute. The theory involves the idea that the requirement of the municipal representative finds some reasonable basis in the contract, and that the question whether his demand is proper or. improper is one which may be the subject of some doubt and debate and in respect of which the contractor might prove to be mistaken if he should refuse to do what was required of him, and there is no justification for ap-plying it where the municipal representative requires something which is so palpably and manifestly beyond the provisions of the contract that the con-tractor would not be confronted by any of the legal perils of an erroneous decision if he should refuse to obey."

And the right to recover such a claim for extra work based upon a breach of a contract is limited to such a case. I do not see how it can be said that we have now before us a case which is within the rule there applied. Here upon the contract as it was executed the contractor was clearly obliged to conform the grade of the avenue to the established grade and to make the necessary excavation to ac-complish that object. The grade for this avenue had been established by a plan which was on file in the county clerk's office which had been approved by the board of estimate and apportionment, and on the demand of the engineer and the borough president plaintiff con-formed the street to this grade. There was no question of the con-struction of the contract, for that clearly required the pavement to be laid at the grade established by this plan. The contractor wished to adopt the actual existing grade of the street, not that established by the plan which seems to have been the only one in existence which established the grade. There was therefore no doubtful question of the construction of a contract, but solely a question of the amount of work that the contractor was required to do to complete his contract, and that by the contract was to be determined by the engineer in charge of the work, a determination which by the contract the con-tractor himself especially agreed to be bound.

It seems to me, therefore, that the case as presented was not one which justified the contractor in going and doing the work and there-after recovering as for extra work under the guise of a breach of the contract, and I do not think, therefore, the judgment should be sustained.