Bartholomew Dunn, Respondent, *v.* The City of New York, Appellant.

Contract — construction of contract for paving a street — contractor held to obligations assumed by him — when he cannot recover for work required by conditions not known or ascertained by him at time of entering into contract.

1. Plaintiff sought to recover damages of the defendant upon causes of action arising out of the performance by his assignor of two contracts made with it. These contracts were for "regulating

and paving " the roadways of certain streets. The contracts contained numerous stringent provisions explicit in their terms, which were also in the first instance contained in the advertisement for proposals for the work; among other things, the contractor stipulated "that he shall not, and will not, at any time, dispute or complain of such statement (the surveyor's estimate), nor assert that there was any misunderstanding in regard to the depth of the excavation to be made ❊ ❊ ❊ or work to be done; ❊ ❊ ❊ that he will not ask, demand, sue for or recover for the entire work any extra compensation beyond the amount payable for the several classes of work in this contract enumerated, which shall be actually performed, at the prices therefor herein agreed upon and fixed." That "all paving and other stones necessary to be removed shall be taken up; ❊ ❊ ❊ the subsoil or other matter, (*be it earth, rock or other material*) shall then be excavated and removed by the contractor to such depths that when properly shaped and rolled it shall be sixteen inches below the surface of the broken stone when completed, irrespective of the finished material, and sixteen inches below the surface of the stone pavement, or new line of bridge stones. *If rock be encountered, it shall be removed for at least three inches deeper."* It appeared that the contractors under the previous grading contracts had not removed all of the rock below the surface of the roadways to the depth of the grade. The plaintiff's assignor completed his contract, and in doing so upon requirement of defendant excavated and removed such rock. *Held,* that there was no warranty in the contract as to the character of the soil, nor as to the correctness of estimates, and that plaintiff could not recover for excavating the roadway to the required depth. (*Horgan* v. *Mayor, etc., of N. Y.,* 160 N. Y. 516, distinguished.)

2. Constructive notice from a record depends altogether upon whether it is provided for by some statute. Official files, in the absence of a statutory provision, carry no notice to the public. Hence, plans on file in municipal offices, which accompanied the prior grading contracts for these roadways, constituted no representation to bidders upon the proposals for contracts.

*Dunn* v. *City of New York,* 141 App. Div. 280, reversed.

(Argued April 11, 1912; decided April 30, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 9, 1910, affirming a judgment in favor of plaintiff entered upon a verdict.

The plaintiff brought the two actions, which have been consolidated into the present one, to recover damages of the defendant, upon causes of action arising out of the performance by his assignor of two contracts made with it. These contracts were for "regulating and paving with Macadam pavement" the roadways of Eleventh avenue, from Kingsbridge road to Fort George road, and Fort George avenue, from Amsterdam avenue to Eleventh avenue. They were entered into by the plaintiff's assignor in July, 1893, after due advertisements for proposals; which stated the number of square yards of pavement and of square feet of bridge stone required to be furnished and laid. The prices stated by bidders were "to cover the furnishing of all the necessary materials and labor; also, necessary preparation of the foundation" and "the performance of all the work required by the contract set forth in the specifications and form of agreement annexed." Referring to the surveyor's estimate of the work to be done, the advertisement further stated that, as the quantities were approximate only, "bidders are required to submit their estimate upon the following express conditions. * * * Bidders must satisfy them-selves, by personal examination of the location of the proposed work, and by such other means as they may prefer, as to the accuracy of the foregoing estimate, and shall not, at any time after the submission of an estimate, dispute or complain of such statement or estimate of the Engineer, nor assert that there was any misunderstanding in regard to the depth of the excavation to be made or the nature or amount of the work to be done." The form of agreement and the specifications were annexed to the advertisement. By the agreement, as advertised for and as executed, the contractor admitted and agreed "that the amounts and quantities of materials to be furnished and work to be done, as stated in the proposals for estimates for the said work, are approximate only; that he is satisfied with the foregoing

(surveyor's) estimate, in determining the prices according to which he agrees to do the work required by this contract, and that he shall not, and will not, at any time, dispute or complain of such statement, nor assert that there was any misunderstanding in regard to the depth of the excavation to be made, or the quantity of filling that may be required to place the pavement upon the required grade, or the nature or amount of materials to be furnished, or work to be done; * * * that he will not ask, demand, sue for or recover for the entire work any extra compensation beyond the amount payable for the several classes of work in this contract enumerated, which shall be actually performed, at the prices therefor herein agreed upon and fixed." Reference is then made to the plans for the work, on file in the office of the water purveyor, which were to be taken as part of the agreement. The specifications described, in detail, the work to be done in laying a Macadam pavement with Telford foundation and, with reference to the "preparation of foundation," and of roadbed required, there were these provisions: "All paving and other stones necessary to be removed shall be taken up; * * * the subsoil or other matter, (*be it earth, rock or other material*), shall then be excavated and removed by the contractor to such depth that when properly shaped and rolled it shall be sixteen inches below the surface of the broken stone when completed, irrespective of the finished material, and sixteen inches below the surface of the stone pavement, or new line of bridge stones. *If rock be encountered, it shall be removed for at least three inches deeper*, and should there be any spongy or objectionable material or vegetable matter discovered, all such material shall be removed," etc. By other provisions, it was "agreed that all loss or damage arising out of the nature of the work to be done under this agreement, or from any unforeseen obstructions or difficulties, which may be encountered in the prosecution

of the same, or from the action of the elements, or from incumbrances on the line of the work, shall be sustained by the said contractor." The contractor agreed "to receive the following prices as full compensation for furnishing all the materials and performing all the labor, which may be required in the performance of the whole of the work to be done under this agreement, and in all respects performing and completing the same, to wit: for the new pavement per square yard, the sum of $1.95 and for * * * new bridge stones, per square foot, the sum of .65. It being expressly understood * * * that the aforesaid prices cover the furnishing of all the different materials and all the labor and the performance of all work mentioned in these specfications and agreement." It was "expressly understood and agreed * * * that the action of the engineer or surveyor, by which the said contractor is to be bound and concluded according to the terms of this contract, shall be that evidenced by his final certificate," etc. Prior to bidding upon the proposals, the plaintiff's assignor made a preliminary examination by walking over the streets and seeing them to be "curbed and flagged and graded" and to be like ordinary graded dirt roads; by looking at the plans on file and by examining, in the comptroller's office, the prior grading contracts. The roadways, which were the subjects of these paving contracts, had been, some years previously, regulated and graded under public contracts. After these contracts had been executed, the plaintiff's assignor, in excavating the roadway to the depth required, found rock in its native state, which, for its removal, required blasting and, thereupon, he complained to the water purveyor, in supervision of the work. He told him " this rock was not in my contract and he said he could not help that; that I should go ahead and remove it." He made a similar complaint to the commissioner of public works and was told that he "would have to go ahead and remove it." It appeared that the contractors,

under the previous grading contracts, had not removed all of the rock below the surface of the roadway to the depth of the grade. The plaintiff's assignor completed his contract and, in doing so, excavated and removed the rock found in the roadway. He accepted from the city, under protest, the final payments remaining due according to the prices in the contracts and, then, commenced these actions; in which he demanded judgments for the reasonable value of the excavation and removal of the rock. Though the complaint contained allegations of false representations made to plaintiff's assignor as to the work to be done, the trial proceeded, not as in tort, but as upon a cause of action for the recovery of the reasonable value of excavating work, not included in the contract. The plaintiff claimed, in substance, that, as the contracts made no reference to any grading work, he was justified, from the appearance of the roadways, the terms of the proposals, the contracts and the plans, in assuming that the rock had been theretofore excavated from the roadways, to the depth of the roadbed required, and that it was a breach of agreement on the city's part to require him to take it out.

The trial court held with the plaintiff as to the obligation of the city and submitted to the jury only the questions of the amount of work performed by the plaintiff's assignor and its value. The jury returned a verdict for the plaintiff for $37,485 and, upon appeal to the Appellate Division, in the first department, the judgment thereupon entered was affirmed by that court; the learned justices sharply dividing in opinion. The defendant, further, appealed to this court.

*Archibald R. Watson,* Corporation Counsel (*Terence Farley* and *Francis Martin* of counsel), for appellant. Plaintiff failed to establish a cause of action. (*Hart Co. v. City of New York,* 129 App. Div. 903; 203 N. Y. 531; *B. Const. Co. v. City of New York,* 200 N. Y. 149.)

Assuming that the excavation of rock to sub-grade was not within the express terms of the contracts, it nevertheless constituted an unforeseen obstruction or difficulty, within the meaning of the contracts, and the contractor is not entitled to recover the cost of removing it. (*Mairs v. Mayor, etc.*, 52 App. Div. 343; 166 N. Y. 618; *Lentilhon* v. *City of New York*, 102 App. Div. 548; 185 N. Y. 549; *Sullivan* v. *President, etc., of Sing Sing*, 122 N. Y. 389; Wait on Eng. & Arch. Juris. §§ 678, 679.)

*Montgomery Hare* for respondent. The judgment appealed from is amply supported by authority. (*Borough Const. Co.* v. *City of New York*, 200 N. Y. 149; *Horgan* v. *Mayor, etc.*, 160 N. Y. 516; *Gibbons* v. *U. S.*, 15 Court of Claims Rep. 174; 109 U. S. 200; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 102 N. Y. 205; *Lentilhon* v. *City of New York*, 102 App. Div. 348.)

GRAY, J. I think that no cause of action was made out and, therefore, that the complaint should have been dismissed. The contracts, into which the plaintiff's assignor entered with the city, were explicit in their terms and as complete in the expression of the respective agreements of the parties as language could well make them. The parts, which have been referred to in the foregoing statement, have been taken as exemplifying the fullness with which the municipal officers sought to have the obligations of the city and of the contractor defined and to guard against any claim for extra compensation. Following the command of the charter, they advertised for proposals to do the work and published the form of agreement to be executed; so that there might be no misunderstanding as to the results demanded by the city and the extent to which it might be bound to compensate. Indeed, the plaintiff, notwithstanding allegations in his complaint of misrepresentations with respect to the condition of the roadways, which were to be

paved, rests his right to recover damages, measured by
the reasonable cost of the removal of the rock found above
the sub-grade line, upon the theory of a breach by the
defendant of the paving contracts.   This breach, he con-
tends, arose "from the wrongful direction of the defend-
ant, its officers and agents, requiring the plaintiff's
assignor and the plaintiff to excavate rock, which was
not included in the terms of the contracts."   Again, to
be particular with respect to what he contends for, he
asserts his claim to be that the contracts "made no
reference, and had no relation whatsoever, to any grad-
ing work and that the City fairly represented to him and
his agents that the grading work had been fully per-
formed, and that *from such representations, consisting
in the appearance of the roadways, which were to be
paved, the terms of the proposals and contracts, and
the plans therein referred to, and the public records of
the City,* exhibited to him, he was justified in assuming
that the rock had been theretofore excavated."   He
admits that he was required by his agreement to remove
certain rock; but insists "that the rock removal required
would be only such as is usually to be included by the
terms of such paving contracts as his assignor bid
upon, relating to a street, which has been already
graded."   Thus, the question is made one whether, from
the nature of the contract, the description of the
work agreed to be performed and the conditions stated
as to performance and as to compensation, any agree-
ment was implied on the part of the city, (none is
expressed), that the contractor should not be required
to do any general rock excavation.   Was it the intention
of the parties, to be derived from these contracts, that
the contractor should only remove what rock might be
expected to be left upon a due performance of the prior
grading contracts; that is, loose, and not native, rock,
lying above sub-grade ?   If this be the true reading of the
contract, then, I think that our language must be deemed

inadequate to express the intentions and the agreements of parties. If the agreement is unnecessarily comprehensive in its terms for a contract to regulate and pave a street, already graded, it was, nevertheless, the one advertised for. It is too precise and minute in its requirements to be characterized as ambiguous. The proposals advertised for were to be made upon bidders satisfying themselves "by personal examination of the location of the proposed work, and by such other means as they may prefer, as to the accuracy of the estimates." They were not to "assert that there was any misunderstanding in regard to the depth of the excavation to be made, or the nature, or amount, of the work to be done," and the agreement, which was to be executed, contained a clause in, substantially, this language. The contractor was to agree that he would not demand "for the entire work any extra compensation;" that, in the preparation of the roadbed, "the subsoil, or other matter, (*be it earth, rock or other material*), shall be excavated and removed to such depth that    *    *    *    it shall be sixteen inches below the broken stone when completed;" that "*if rock be encountered,* it shall be removed for at least three inches deeper" and that "all loss or damage, arising out of the nature of the work to be done under this agreement, *or from any unforeseen obstructions or difficulties, which may be encountered in the prosecution of the same*    *    *    *    shall be sustained by the contractor." Finally, the contractor was to agree to receive the prices specified per square yard of the new pavement and per square foot of the new bridge stones, "as full compensation for furnishing all the materials and performing all the labor, which may be required in the performance of *the whole of the work to be done under this agreement.*" It is difficult to perceive how, if such an agreement, as the one called for by the city, was entered into, there could be any loophole left for a claim for extra compensation, if "rock was encountered" between the surface

grade and the sub-grade, or "if unforeseen obstructions" were encountered; or upon the basis of "any misunderstanding in regard to * * * the work to be done." If there is any virtue in a written contract, as the final repository of the intentions and agreements of the parties to it, then, I think we must hold that in these contracts nothing has been left for the work of interpretation. Certainly, so far as it might be claimed that the municipal authorities committed the city to any understanding, or obligation, with respect to the rock which might be found, it would seem to have been covered by these clauses. It might be assumed that, ordinarily, a "regulating and paving" agreement, in the absence of provisions for grading, technically, does not contemplate rock excavation, between the lines of sub-grade and of surface grade, of a graded street, but the assumption is inefficacious, where the actual agreement is so framed as to cover all contingencies, which may arise in preparing a roadbed, as specified. However rigorous these agreements, they are not unjust and they were optional. If, in this case, we should, as we, probably, must, assume that the contractor was deceived by appearances; that is to say, by the appearance of the roadway and by his comparisons of the old plans on file, relating to the prior grading contracts, with those of the contracts he was to estimate upon, he has but himself to blame. He had the opportunity to physically examine the location of the work to be done and if that called for extensive tests, by way of borings and soundings, that fact, however troublesome, was one he must take into consideration. He had presented to him an agreement, which was precise and strict in its requirements and which cast upon him the possible risk that all might not be as it appeared, or as estimated by the surveyor. Admittedly, borings and soundings would have revealed the imperfect performance of the previous grading contract, in the leaving of native rock under the

surface of the roadway. The municipal authorities were, equally, deceived, presumably; but, in complying with the statute, by advertising for proposals, they made no representations and they guarded against all misunderstandings and contingencies through the proposed agreement. They had no power to bind the city otherwise and any representations, on their part, in the absence of fraud, (which is not charged), would be quite ineffectual to impair the force of the agreement to be executed.

It is argued that, when bidders were required "to satisfy themselves by personal examination * * * and by such other means as they may prefer," they were entitled, not only to rely upon the physical examination, but also upon the plans for the prior grading contracts and the final certificate of their completion. It should suffice, as an answer, to say that the acceptance by the city of the prior work was not a representation of anything, upon which this contractor was entitled to rely. In determining what would be his obligation, he was to consider, only, the advertisements for proposals, the proposed agreement and the plans and specifications for this work. It should be clear from the context, that the "other means," to be resorted to, related to the ascertainment upon the ground of the accuracy of the surveyor's estimate and to the character of the work of excavation necessary to prepare the foundation of the roadbed. The contractor was to agree not "to assert that there was any misunderstanding in regard to * * * the nature, or amount, of the work to be done." It is insisted that an examination of the profile plans of these contracts, and comparisons with the profile and cross-section plans of the prior grading contracts would show the absence of surface variations and warrant the assumption that all rock had been previously removed. That may well be; but there remained the agreement and its express stipulations warned against assumptions as to matters, which might be verified by local examination.

There was no warranty in the contract as to the character of the soil, nor as to the correctness of estimates. The provisions of these contracts were framed to meet the possible event of mistaken assumptions, indulged in from whatever source, and to charge the contractor with the duty of satisfying himself as to the nature and extent of the work, which might be required to regulate and pave the avenues. Excavation to sub-grade was necessary, in order to lay a foundation for the pavement agreed upon, and rock, as well as other substances, had to be removed to the required depth.

So far as the respondent's argument is rested upon the theory of public notice, or knowledge, from the plans on file in the comptroller's office, relating to the prior grading contracts, it need, only, be observed that constructive notice from a record depends, altogether, upon whether it is provided for by some statute. Official files, in the absence of a statutory provision, carry no notice to the public. (See Amer. & Eng. Ency. of Law [2d ed.], vol. 24, pp. 77, 141, 144.) There is no analogy to be found with assessment records; for assessments, and entries affecting them and their lien, are matters regulated by statute and the record is constructive notice to third persons. (*Curnen* v. *Mayor, etc., of N. Y.*, 79 N. Y. 511.) Official files are usually kept for the security of business transactions and for convenience of reference. Plans on file in municipal offices, which accompanied the prior grading contracts for these roadways, constituted no representation to bidders upon the proposals for contracts as to any fact.

To repeat, by these contracts the city did not warrant the correctness of estimates, or plans, and their provisions for agreements on the part of the contractor were such as to charge him with the burden of determining for himself the quantity, nature and extent of the work, for the doing of which he was to bid. The contracts defined the obligations of the city and the respondent

points to none, which it has failed to perform. The contractor has suffered what loss resulted from the necessity to excavate rock, by reason of his reliance upon misleading appearances; rather than upon what a careful, physical examination of the roadways would reveal. No representations of city officers misled him. Reliance is placed by the respondent, as in the prevailing opinion at the Appellate Division, upon our decision in the case of *Horgan* v. *Mayor, etc., of N. Y.* (160 N. Y. 516). But the difference between the cases is substantial; in that, in the case cited, there was in the specifications, which were embodied in the contract, a representation, in the nature of a warranty, materially bearing upon and defining the contractor's work. The agreement was to excavate and remove the silt and sediment from the bottom of "The Pond," in the Central Park, and to construct a concrete bottom. The action was for the extra work, which the plaintiff was obliged to perform, in emptying the water from the pond; which, had the city's outlet pipe been in good order, would have emptied itself. The specifications showed that the contractor was to furnish all labor and materials for "*draining* off the water from the bottom during the prosecution of the work; for *conducting the flow of water* through, or across, the area of the pond," and "for conducting the flow of water * * * *to the outlet,* or *for draining* water from any portion of the area." The plaintiff made a "personal examination of the location of the proposed work;" but "it was, of course, impossible * * * to see more than the outlet gate and the size thereof." Shortly after the acceptance of the contract, upon the plaintiff requesting the municipal authorities to draw off the water, they opened the outlet gate and drew the water down to a certain depth, when the outlet pipe leading to a sewer ceased to work from some serious obstruction occurring. Despite the plaintiff's protest that his contract did not require him to do so, the engineer insisted upon his pumping out the

remaining body of water and he complied. It was held by this court that the city "owed the duty to the plaintiff of having the outlet pipe of the pond in working order" and that the contract did not obligate the contractor to "pump out the water of the lake in a general sense," or otherwise than as might be necessary by the inequalities of the bottom. The principle of the decision was that the city had failed in its agreement, to be implied from the specifications, to maintain the outlet at the bottom of the pond and that the contractor was damaged, to the extent that he was required to do work, which the contract did not contemplate. The obstructions to the drainage were chargeable to the city; forasmuch as it was its duty to maintain the outlet it had represented as existing. But, in this case, the contract makes no representation that the rock had been removed from the roadway and contains no provision, which might, by implication, be construed as an obligation of the city to remove any that might be found.

For these reasons, as for those well assigned by Mr. Justice INGRAHAM, dissenting in opinion at the Appellate Division, I advise that the judgment appealed from should be reversed and a new trial ordered; with costs to abide the event.

CULLEN, Ch. J., WERNER, HISCOCK, CHASE and COLLIN, JJ., concur; WILLARD BARTLETT, J., absent.

Judgment reversed, etc.