# MILLS NOVELTY CO. v. MONARCH TOOL & MFG. CO.

## No. 5642.

Circuit Court of Appeals, Sixth Circuit.
April 20, 1931.

Carl S. Lloyd, of Chicago, Ill. (Arthur H. Stuart, of Chicago, Ill., William R. Wood and Edmund P. Wood, both of Cincinnati, Ohio, Kirkland, Fleming, Green & Martin, of Chicago, Ill., and Wood & Wood, of Cincinnati, Ohio, on the brief), for appellant.

Walter Murray, of Cincinnati, Ohio (Murray & Zugelter, of Cincinnati, Ohio, on the brief), for appellee.

Before DENISON, MOORMAN, and HICKS, Circuit Judges.

DENISON, Circuit Judge.

Infringement suit upon two patents for coin controlled mechanically played instrument, one issued September 19, 1916, on application filed July 10, 1909, No. 1,198,860, to Lesley and Enz (hereafter called Enz) and one issued September 19, 1916, on application filed December 16, 1910, No. 1,198,861, to Lesley and Schoen (hereafter called Schoen).

The District Court's opinion held that Enz was invalid for lack of invention; that Schoen was valid and infringed; that the defense of laches was not good; and that the title to Schoen had failed through the effect of bankruptcy proceedings. The bill was therefore dismissed by a single entry, making no recitals; and the plaintiff appeals, assigning as error mainly that Enz should have been held good and infringed and that the plaintiff's title to Schoen should have been sustained.

On the argument here, defendant presents several of the defenses urged below; appellant insists we should consider only the questions which the District Court decided against it. This is not the rule. Appeals in equity bring up the whole case (with certain inferences in favor of the decree below), and the decree below should be sustained if it was right for any reason. Linde Co. v. Morse Co. (C. C. A. 2) 246 F. 834, 837. It follows that we must consider all those defenses which might be good as against the relief otherwise to be given.

The patents had special practical reference to automatic pianos, playing by electrical means and set in motion by a coin in the slot. In 1920, the owner brought suit upon these two patents, and another, against Wurlitzer, and in 1926 they were held valid and infringed. (D. C. Ill.) 10 F.(2d) 812. In the same year, 1926, this suit was brought.

It is plaintiff's theory that the Enz patent is generic and the Schoen patent specific, and that defendant by the same structures has infringed both. The Schoen form is the one which plaintiff has marketed and which has had the commercial acceptance which was important in leading the court below to conclude that the Schoen patent covered a real inventive advance and was valid—this conclusion being reached and announced before the objection to plaintiff's title to this patent was made. The two patents would expire at the same date; it is not suggested that any one has infringed or is likely to infringe Enz by any device which would not also infringe Schoen; and, so far as we observe, the commercial effect of an injunction and liability for profits and/or damages would be the same whether based upon one or upon both patents. The question whether Enz involves invention over the prior art is not easy of decision. It involves careful consideration of several conflicting questions, and the decision would have little or no value as a precedent upon other patents. Having reached the conclusion, hereinafter stated, that plaintiff is entitled to relief upon the Schoen patent, the questions arising under Enz now seem to us practically academic; and we prefer to leave them undecided. To effectuate this result, the bill as to Enz should be dismissed without prejudice.

The District Judge overruled the defense of laches. We think he was right. The defendant and its predecessors had been manufacturing devices, probably infringing, since some time before the Schoen patent was granted. Even if plaintiff's assignors knew of this, there was surely no obligation upon them to give the defendants notice of infringement, before the patent issued. To do so would be to invite interferences and other contests. Notice of infringement was given in 1916, promptly upon issue, and during the next four years the infringement continued and no action was taken. There is sufficient evidence that during most of this period the owners of the patents were financially unable to undertake the burden of patent litigation. Much of the period was also during the war, when such litigation was rightly discouraged. The patentees had given their notice, they

had not withdrawn it, and, during that period, the defendants continued their infringement at their peril. In 1920 further notices of infringement were served, and, as in the former instance, defendants paid no attention whatever. A suit, serving as a test, was promptly begun; and there is no complaint of any unreasonable delay in its prosecution. On the termination of that suit, this one was begun at once.

The right to an accounting of damages in equity is given by the statute in a permissive way. The court of equity will exercise its discretion in granting an accounting as well as in passing upon a preliminary injunction, and will consider all the respective equities of the parties. This is well settled; but for refusing an injunction upon final hearing when the patent has still a substantial term to run, when the legal title to the monopoly and its infringement by defendant have been finally established and when there has been no misleading of defendant, akin to fraud, we find no precedent in the Supreme Court or in this court.[1] Some of the reasons which move a court of equity in passing, even finally, on equitable rights do not apply; the question is merely of an equitable remedy for a legal right. We have not been referred to or found any very satisfactory discussion of the problem; but it is sufficient for the purpose of this case to say that the record does not show such laches as to justify even the denial of the usual accounting. The facts above recited sufficiently excuse whatever delay there was. Alliance Co. v. De Vilbiss Co. (C. C. A. 6) 41 F.(2d) 668, 670; Kittle v. Hall (D. C.) 29 F. 508.

■ Defendant does not point out any special injury to it coming from the delay and tending to operate as an estoppel, except that, in 1920, its manager died, leaving no one in the business who was familiar with the history of the art and might have known about or been able to find anticipation. When he received the notice of infringement in 1916, and again in 1920, he apparently did nothing to prepare or preserve any defense. We cannot regard this event as magnifying delay into estoppel.

■ The only remaining question as to patent validity rests in some belated depositions as to the Schoen escapement device, tending to show prior invention or two years' prior use. Without considering the motion to strike out these depositions because taken without authority, the District Court held that they did not sufficiently establish either defense. We have reviewed the evidence and we agree with this conclusion. The proofs only attempt to carry the use back just beyond the critical two-year point, and certainty as to time is therefore particularly essential. The witnesses fixed the time with reference to certain events unrelated to this subject, and the time of these events is well enough established; but that the use in question occurred before these events is, after all, a matter of unconfirmed recollection. This use is also categorically denied by witnesses who should have known of it. The same comments apply generally to the proofs of prior invention; and, in addition, Lesley carries the invention by himself and Schoen far enough back to avoid the alleged priority in others. His testimony tends to show a sufficient reduction to practice, and a fair reason for suspending manufacture upon this form. It is as convincing as that on the other side. The criticisms made against it are fairly well met.

■ We come now to the ground upon which the court below based its dismissal of the case under the Schoen patent. Schoen, December 16, 1910, became an applicant for this patent, jointly with Lesley, and the Patent Office records continued to show his joint interest until the patent was issued to them both, September 19, 1916. On April 14, 1915, Schoen was adjudged an involuntary bankrupt, and thereupon (the exact date is not shown) filed his schedule of personal property assets, in which under the heading "Patents, Copyrights and Trademarks, etc.," he said "None." He was discharged in bankruptcy within the first year. Nothing appears as to any action by the trustee or creditor during the ten years before this suit was commenced or during its three years' pendency, indicating any claim against this patent as a bankruptcy asset. It is fairly to be assumed that the trustee was discharged many years ago. Lesley and Schoen sold the patent to plaintiff while this suit was pending, and, in effect, showed this by supplemental bill.

The situation presents a number of interesting questions which do not seem to be clearly covered by any authoritative decision.[2] Is it necessary that the complainant in an equity suit for infringement have the

---

[1] Woodmanse v. Williams (C. C. A. 6) 68 F. 489, is not inconsistent with the text. The later patent was found not infringed; the earlier one had expired, even before the decree below.

[2] We pass by the point that the objection based on the bankruptcy was so belated that it should not have been considered. Defendant's failure to raise it much earlier seems without excuse.

complete, perfect, and entire legal title, or may one joint owner (who owns, not the whole of a half, but a half of the whole) maintain the suit if it sufficiently appears that there is no outstanding title to the remaining interest which could subject defendant to the danger of a further recovery in law or in equity? Where there has been a transfer of a pending application, not recorded or capable of record, and the patent issues to the inventor assignor, does he take the legal title in trust for the earlier assignee, or does he take no title, legal or equitable? If he takes the legal title as trustee, or even only the apparent legal title, and sells to a good-faith purchaser (as we might assume happened in this case), does the latter title prevail over the earlier unrecorded assignment?[3] To what extent do the present statutory provisions for recording assignments in the Patent Office affect the character of the title or interest acquired by the assignee of the inventor patentee, as against the assignee by a pre-issue transfer? Prior to the 1926

[3] It is a familiar principle that where, through fraud or mistake, a grant is made to A which should have been made to B, A holds the legal title in trust for B, who has the equitable title; and that if A conveys his legal title to C, a purchaser with no notice of these rights, C's legal and equitable title will prevail over B's equity. Lacking the intervention of such a purchaser, a court of equity would compel A to convey to B. Upon this principle, it would seem that where a pending—or contemplated—patent application is assigned, but later the patent somehow issues to the inventor assignor, he would hold the legal title in trust for the earlier assignee, particularly as the monopoly was not in existence when the first assignment was made; and there are many cases applying this principle to rights in inventions. However, Gayler v. Wilder, 10 How. 477, 492, 13 L. Ed. 504, has been regarded as holding that in such case the inventor patentee takes nothing and the earlier assignee takes the full title. We find no reported discussion of this case attempting to reconcile it with the principle above stated, which was stressed in the dissenting opinion, and which of course is not denied in the main opinion. The rationale of the decision, in this respect, is not made very clear. Perhaps it should be deemed to rest upon the principles by which a deed with warranty will convey in law an after-acquired title. When the inventor assignor conveys the invention, identifies the pending application, makes the assignment recordable, and requests that the patent issue to the assignee, he has done all he can to vest in the assignee the full legal title. In a suit brought, after issue, against the pre-issue assignee by the inventor patentee, the plaintiff would be estopped to deny defendant's title. If this be the rationale of Gayler v. Wilder, manifestly the decision would not apply where there had been no recorded assignment requesting issue to the assignee; and so Judge Blatchford thought. U. S. Co. v. Jewett (C. C.) 7 F. 869, 878; Philadelphia, W. & B. R. Co. v. Trimble, 10 Wall. 379, 19 L. Ed. 948, is not particularly helpful, because the only thing there decided is that a pre-issue assignee, whose legal title to the patent had been perfected by a post-issue conveyance from the inventor patentee, took also the legal title to an extension of the same patent, if he had the equitable right thereto. See cases cited in Individual Co. v. Osmun Co. (D. C. N. J.) 220 F. 335, 338.

amendment of section 70 of the Bankruptcy Act (tit. 11, USCA § 110), was the interest of an inventor in his invention, upon which he had made application for a patent, such "patent right" or "property" as passed by this section? See In re McDonnell (Shiras, D. J.) 101 F. 239; In re Dann (Seaman, D. J.) 129 F. 495; In re Myers-Wolf Co. (C. C. A. 3) 205 F. 289. These questions have received study, but we conclude they all may be passed by without decision, since we think that for another reason the title of the plaintiff, legal and equitable, is here sufficient.

When property of the more ordinary type has been owned by a bankrupt, the complete title passes to the trustee, taking effect by relation upon the date of filing the bankruptcy petition, and it may well be assumed that a formal reconveyance by the trustee would be necessary to revest the title in the bankrupt. Some property, however, may carry such burdens that the trustee is not obliged to accept, but has an election to accept or reject, and the title does not pass to and vest to him in the same unconditional way. Where there is property of this character, it would seem that the title passes to the trustee upon condition subsequent. If he decides not to accept, the implied condition is broken and the title revests in the bankrupt —if indeed there has ever been more than a tender of the title. In the event of such rejection, it is clear that no formal conveyance by the trustee to the bankrupt is required. Sessions v. Romadka, 145 U. S. 29, 39, 12 S. Ct. 799, 36 L. Ed. 609.

The interest of the inventor in an invention which is evidenced by pending application for a patent is very clearly of the class where the title which the trustee gets or may get, is burdened with such conditions that acceptance may be an injury rather than a benefit to the trust estate. Such application represents an inchoate and unproved right. It is practically a lawsuit brought by the inventor to persuade or compel the government to make a grant of a monopoly to which he thinks himself entitled. Any prosecution of the proceeding necessarily involves some expense, its proper prosecution a considerable expense, and that prosecution which may be and often is necessary, a very large expense, as well as months or years of delay. The patent to be received, judging by the average experience, may not be worth what it costs to get it. Clearly, it is for the trustee to decide whether or not he will take on this certain burden with its contingent benefit. If such

a patent application is scheduled, and thus (or, probably, in any other way) comes to the trustee's knowledge, it is clear that, before the amendment of 1926, he had a reasonable time in which to elect. His distinct manifestation, even though wholly by parol, that he thought best not to accept is sufficient to terminate his right of acceptance and to revest the title in the bankrupt. Sessions v. Romadka, supra; Dushane v. Beall, 161 U. S. 513, 515, 16 S. Ct. 637, 40 L. Ed. 791; Bank v. Lasater, 196 U. S. 115, 119, 25 S. Ct. 206, 49 L. Ed. 408; Smith v. Gordon, 6 Law Rep. 313, Fed. Cas. No. 13052; Taylor v. Irwin (C. C. Iowa) 20 F. 615. While we find no controlling or persuasive precedent, it seems obvious that if, with this knowledge, he does nothing toward acceptance or prosecution, but permits the estate to be wound up and himself to be discharged as trustee, the reasonable time allowed him for election has expired, with the result that the title again rests in the bankrupt. Whether upon sufficient cause shown the estate could be reopened—lacking the intervention of a good-faith purchaser—and the title be taken over by a successor trustee, need not be considered.

■■■■ This brings us to the question as to what happens when, as here, the patent application is not scheduled, and, by supposition, the trustee does not otherwise know about it, but in ignorance thereof proceeds, after a year or two, to wind up the estate and be discharged.[4] Upon the assumption that the title to this invention has been in him without his knowledge up until the closing of the estate, what becomes of it? It cannot remain in the trustee; he is dead. It is difficult to conceive that it remains in the bankruptcy court, which has wiped this subject-matter off its books. The theory most favorable, as against complete revestiture in the

bankrupt, would seem to be that the failure to schedule or otherwise give notice to the trustee would extend the reasonable time within which he or those entitled to do so might elect whether the title should be taken over for the benefit of the bankrupt estate. If this right of election survives the trustee's discharge, perhaps the creditors as a body may, within a reasonable time, demand the property and obtain it by reopening. Their reasonable time must, at the latest, start to run when they are chargeable with notice that the patent application existed at the time of bankruptcy. When the patent issues and becomes a public record, showing on its face that at the time of bankruptcy it was a pending application, the whole public, including these creditors, is chargeable with notice thereof; and if, within a reasonable time after having such notice, no proceedings are taken to get control of the patent in the interest of the bankrupt's creditors, the title must remain where it apparently is.[5] Whatever might be a reasonable time, thirteen years is too long; and if conceivably some otherwise sufficient excuse could be made for that delay, an intervening sale to a good-faith purchaser, who bought an apparently perfect title, would be an unanswerable objection. In case of any substantial delay, after the public notice given by the issue of the patent to the inventor and after the bankrupt estate is wound up and the trustee discharged, the burden must be upon the claimant to show circumstances to justify a reopening of the estate and to show the nonexpiration of a reasonable time to claim the invention for the benefit of the bankrupt's creditors. The suggestion that there might be some possible outside interest is one which a court of equity ought not to accept from a mere trespasser for the sake of enabling the trespasser to avoid the results of his unlawful action.

The result of this opinion is that the decree below should be reversed, with instructions to enter the usual interlocutory decree for injunction and accounting upon the Schoen patent, and, as to the Enz patent, to dismiss the bill without prejudice.

[4] If it might somehow be important, as is suggested, that the bankrupt fraudulently concealed such an asset, this record does not justify any inference of such fraud. By the weight of legal opinion, according to the then latest edition of a standard authority (Walker on Patents [4th Ed.] p. 235), such an asset should not be scheduled. There would be no fraud in its omission. Indeed, in Sessions v. Romadka, supra, the only concealment was by a failure to schedule, and the assignee, whose refusal to accept or act was held to effect a revestiture, had been discharged as assignee some time before, and so had no authority either to accept or reject.

[5] Proof was offered in this case showing that the trustee had refused to accept the Schoen patent application. We do not find it necessary to consider whether this proof should have been received and given effect.