## HEYWOOD-WAKEFIELD CO. v. SMALL et al.

No. 3312.

Circuit Court of Appeals, First Circuit.

April 14, 1938.

498

Herbert A. Baker, of Boston, Mass. (Alan B. Bagley, of Boston, Mass., on the brief), for appellant.

Herbert W. Kenway, of Boston, Mass. (James H. Baldwin and Paul K. Connolly, both of Boston, Mass., on the brief), for appellee Small.

Edgar H. Kent, of Boston, Mass. (Harrison F. Lyman and Fish, Richardson & Neave, all of Boston, Mass., on the brief), for appellee Coach & Car Equipment Corporation.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge (after stating the facts as above).

The principal question raised by the defendant's motion to vacate the interlocutory injunction and to dismiss the case is whether the plaintiff, Small, and the Coach & Car Equipment Corporation, the intervening plaintiff, can maintain this suit for infringement. The determination of this question depends upon at least two of three subsidiary questions: (1) Whether the Coach & Car Equipment Corporation acquired a valid title to the patent under the so-called license contract of December 15, 1935, so that it would be entitled to damages for the defendant's infringement of the patent after that date; and, if it did, (2) whether Small acquired title to the patent when it issued to him on October 6, 1931, and can maintain this suit for damages for the defendant's infringement of the patent after that date and down to December 15, 1935, when the Coach & Car Equipment Corporation acquired title

to the patent; and (3) if the Coach & Car Equipment Corporation did not acquire title to the patent, then whether he can maintain the suit for damages for the entire period of the defendant's infringement.

■ As to the question whether the Coach & Car Equipment Corporation acquired a valid title under the so-called license contract, it appears that on December 15, 1935, the date of that contract, Small had, at least, the apparent legal title to the patent; that it had issued to him from the Patent Office in his name; that the records in the Patent Office disclosed no record of an assignment of the patent from him; and that the Coach & Car Equipment Corporation paid him a substantial consideration, in good faith and without knowledge or notice, constructive or otherwise, of any defect in his title. Burck v. Taylor, 152 U.S. 634, 653, 14 S.Ct. 696, 38 L.Ed. 578; In re Atlantic Beach Corp., D.C., 244 Fed. 828; Dunn v. New York, 205 N.Y. 342, 98 N.E. 495; United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 333, 26 S.Ct. 282, 50 L.Ed. 499; 46 C.J. p. 550, § 46; 20 Ruling Case Law, p. 342, § 3. These facts being established, and we think they are, the legal title to the patent became vested in the Coach & Car Equipment Corporation, if the so-called license contract was an assignment within the meaning of the patent law.

■■ In that contract Small granted to the Coach & Car Equipment Corporation the exclusive right under the patent to make, use, and vend the invention during the entire term of the patent; and, as the grant to the patentee was the right to make, use, and vend the invention throughout the United States and the territories thereof, the exclusive right under the patent not being limited in the grant to any particular portion of the United States, and the grant being of the entire monopoly, the so-called license contract was an assignment and not a license, and vested the title to the entire patent in the Coach & Car Equipment Corporation. This being so, the corporation, having been allowed to intervene as a party plaintiff, may recover of the defendant such damages as it sustained from the date of its acquisition of the title to the patent (December 15, 1935) until the defendant ceased its infringement, subject to payments to Small as hereafter defined. Waterman v. Mackenzie, 138 U.S. 252, 255, 11 S.Ct. 334, 34 L.Ed. 923; Crown Die & Tool Co. v. Nye Tool & Machine Works, 261 U.S. 24, 37, 38, 43 S.Ct. 254, 257, 67 L.Ed. 516; Krentler-Arnold Hinge Last Co. v. Leman, 1 Cir., 13 F.2d 796, 799, 802; Littlefield v. Perry, 21 Wall. 205, 220, 22 L.Ed. 577. In the last two cases the consideration for the license or assignment was an agreement to pay royalties.

■■ As to whether Small acquired such a title to the patent when it issued to him on October 6, 1931, that he can maintain this suit for damages for the defendant's infringement from that date to December 15, when the Coach & Car Equipment Corporation acquired title, it appears that Small was the inventor of the car-seat base; that he duly applied for a patent for his invention; and that the records in the Patent Office disclose no record of an assignment of his application before the patent issued to him or at any time. Under such circumstances, the statutes regulating the issuing of patents, Rev.St. §§ 4883, 4884, 4895, 4896, 4898 and 4897, as amended, 35 U.S.C.A. §§ 39, 40, 44, 46, 47, and § 38, are held to require that the patent issue to the inventor, the patentee, and that he takes the legal title to the patent when issued. But that, where the inventor assigns his application in writing and records the same, and the patent later issues to the patentee, the title to the patent vests in the assignee, without a further assignment. Gayler v. Wilder, 10 How. 477, 481, 491, 492, 493, 13 L.Ed. 504. And that, if no record of the assignment is made until after the patent issues, the title to the patent does not vest in the assignee until after the assignment is recorded. United States Stamping Co. v. Jewett, C.C., 7 F. 869, 877, 878.

■ In Crown Die & Tool Co. v. Nye Tool & Machine Works, 261 U.S. 24, at page 40, 43 S.Ct. 254, 258, 67 L.Ed. 516, Chief Justice Taft, in delivering the opinion of the court, said:

"Patent property is the creature of statute law and its incidents are equally so and depend upon the construction to be given to the statutes creating it and them, in view of the policy of Congress in their enactment. This is shown by the opinion of this Court in Waterman v. Mackenzie, 138 U.S. 252, 11 S. Ct. 334, 34 L.Ed. 923, already cited, and in the line of authorities followed therein. It is not safe, therefore, in dealing with a transfer of rights under the patent law to follow implicitly the rules governing a transfer of rights in a chose in action at common law. As Chief Justice Taney said in Gayler v. Wilder, 10 How. 477, 494 (13 L.

Ed. 504): 'The monopoly did not exist at common law, and the rights, therefore, which may be exercised under it cannot be regulated by the rules of the common law. It is created by the act of Congress; and no rights can be acquired in it unless authorized by statute, and in the manner the statute prescribes.' "

In Gayler v. Wilder, 10 How. 477, 481, 491, 492, 493, 13 L.Ed. 504, a written assignment was made and recorded in the Patent Office before the patent issued and contained a request that the patent issue to the assignee. It was issued to the patentee. The defendant contended that the assignment did not convey to the assignee the legal title to the monopoly subsequently conferred by the patent. The court, in that case, among other things, said:

"The act of 1836 declares that every patent shall be assignable in law, and that the assignment must be in writing, and recorded within the time specified. But the thing to be assigned * * * is the monopoly which the grant [the patent] confers: the right of property which it creates. And when the party has acquired an inchoate right to it, and the power to make that right perfect and absolute at his pleasure, the assignment of his whole interest, whether executed before or after the patent issued, is equally within the provisions of the act of Congress."

And held: "that, when the patent issued to him [the patentee], the legal right to the monopoly and property it created was, by operation of the assignment then on record, vested in Enos Wilder [the assignee]."

. In United States Stamping Co. v. Jewett, C.C., 7 F. 869, 877, 878, it appeared that the inventor filed his application for a patent June 3, 1871; that on July 20, 1871, he made an assignment of it to Heath & Smith Manufacturing Company; that the patent issued October 10, 1871, but the assignment was not recorded until November 18, 1871. And Judge Blatchford, then a circuit judge, but later a justice of the Supreme Court, held that the title to the patent did not vest in the assignee, the Heath & Smith Manufacturing Company, on the issuing of the patent, but only after the assignment had been recorded.

These cases demonstrate that, under the patent statutes regulating the assignment of an application for a patent, the recording of the assignment in the Patent Office is made one of the essential requirements of the assignment to vest the title to the patent in the assignee.

When the patent issued to Small, there being no record in the Patent Office of his voluntary assignment in bankruptcy, the estate being closed and no trustee in existence in whom the title to the patent could vest, Small took the legal title and ownership of the patent, charged with an equitable lien, or in trust, by virtue of section 70 of the Bankruptcy Act, as amended, by Act May 27, 1926, 11 U.S.C.A. § 110, and otherwise, to satisfy the claims of creditors who had proved them and to pay the expenses of administering the bankruptcy estate, with the right to hold any balance for himself. He did not take the title as a mere conduit to pass it on to the trustee in bankruptcy, for there was no trustee in existence. Furthermore, if the recording of the voluntary assignment be regarded as nonessential to the vesting of the title in an assignee, as there was here no assignee or trustee in existence when the patent issued in whom the legal title could vest, and the bankrupt estate was closed, equity, like nature, abhorring a vacuum, leaves the legal title in Small where it finds it, charged with an equitable lien, or in trust, for the purposes above stated.

In Mills Novelty Co. v. Monarch Tool & Mfg. Co., 6 Cir., 49 F.2d 28, the situation was much the same as in the case now before us, so far as concerns the transfer of title to an application for a patent by an assignment in bankruptcy, except that the assignment in that case was an involuntary and not a voluntary one. There it appeared that Schoen and Lesley had made an invention and filed a joint application for a patent on December 16, 1910; that on April 14, 1915, and before the patent issued, Schoen was adjudged an involuntary bankrupt, and filed his schedule of personal property assets, in which, under the heading "Patents, Copyrights and Trademarks, etc.," he said: "None"; that within a year after adjudication (before April 14, 1916), the bankruptcy proceedings were closed, and the court assumed as a fact that at about the same time the trustee was discharged; that, thereafter, on September 19, 1916, the patent issued jointly to Schoen and Lesley; that in 1926, the patentees brought suit against the defendant for infringement; that in 1929, and after the suit had been pending for three years, Schoen and Lesley sold the patent to the plaintiff, the Mills

Novelty Company, presumably with all their rights to damages; and that this company became the plaintiff in the suit by supplemental bill.

It was held that the plaintiff, which had purchased the title of Schoen and Lesley to the patent for a valuable consideration, in good faith, and without notice of any defect, had acquired a good title and could maintain the suit for infringement and accounting. It is there pointed out that if the title to Schoen's one-half undivided interest in the patent application was in the trustee without his knowledge, upon the closing of the estate and his discharge it could not remain in him for "he is dead," and it did not remain in the bankruptcy court; that the theory most reasonable for solving the situation was "that the failure to schedule or otherwise give notice to the trustee would extend the reasonable time within which he or those entitled to do so might elect whether the title should be taken over for the benefit of the bankrupt estate"; that if the right of election survived, the creditors might, within a reasonable time, apply to reopen the estate and demand the property; that such reasonable time would start to run when they were chargeable with notice that the patent application existed at the time of the bankruptcy proceedings; that the record made in the Patent Office, at the time the patent issued, showing that, during the bankruptcy proceedings there was a pending application, was notice to the whole public, including the creditors; that if the creditors, within a reasonable time after such notice, failed to proceed to get control of the patent, the title would remain where it was, that is, in Schoen and Lesley, the copatentees; that a delay of thirteen years, if unexplained, would be unreasonable; and that "the suggestion that there might be some possible outside interest is one which a court of equity ought not to accept from a mere trespasser for the sake of enabling the trespasser to avoid the results of his unlawful action." In other words, that the defendant's suggestion of the possible existence of an enforcible right in the creditors, equitable or otherwise, he being a trespasser, was not sufficient to interrupt the prosecution of a suit at his request and for his benefit.

█ Although that case arose prior to the amendment of section 70 in 1926, 11 U.S.C.A. § 110 and note, the assumption upon which the decision was based—that the title to Schoen's one-half common interest in the application was in the trustee without his knowledge up until the closing of the estate—is as broad and comprehensive as any right or title would be that is conferred upon a trustee by the amendment of 1926. The amendment of section 70, 11 U.S.C.A. § 110, vesting in the trustee the title of the bankrupt to an application for a patent, is but a restatement of the law as it existed prior to the amendment, for at common law the inventor had a property right in his invention and, on filing an application, he had, under the patent statutes, the inchoate right to the monopoly to be granted; and there can be little if any doubt but that a property right in an application passed to the trustee in bankruptcy prior to the amendment of 1926.

Without further discussion of this branch of the case we are of the opinion that the title to the patent, from its issuance to the patentee down to the assignment to the Coach & Car Equipment Corporation, was in Small, charged with an equitable lien or held in trust for the benefit of creditors who had proved their claims, provided they asserted their rights within a reasonable time after being charged with notice of the pendency of the application.

█ It necessarily follows from what has been said that Small not only had the right, but that it was his duty to protect the property in the patent, the legal title to which was in him, by bringing this suit for damages and injunction against the defendant. The Coach & Car Equipment Corporation, however, having acquired the legal title to the patent in 1935, was properly allowed to intervene as a plaintiff in the case and recover the damages occasioned by the defendant's infringement, since it acquired title to the patent, free from any claim of the creditors; but having intervened in and availed itself of the benefits arising from Small's prosecution of the suit, it is subject to certain rights of his hereafter mentioned. And Small, being the owner of the title down to that time, during which period the defendant also infringed the patent, may recover the damages thus occasioned (Moore v. Marsh, 7 Wall. 515, 19 L.Ed. 37; Crown Die & Tool Co. v. Nye Tool & Machine Works, 261 U.S. 24, at pages 41, 42, 43 S.Ct. 254, 258, 67 L.Ed. 516; Krentler-Arnold Hinge Last Co. v. Leman, 1 Cir., 13 F.2d 796, at page 803), subject to the right of a legally appointed new trustee (6 Remington on Bankruptcy, p. 448, § 2980;

1 Collier on Bankruptcy, p. 172, 1923 Ed.), to appear in the cause and establish whatever rights creditors, who have duly proved their claims (6 Remington, § 2984), may have in the fund recovered by Small, provided he can show that such creditors, by their delay for more than six years after they were charged with notice of the Patent Office record, have not unreasonably delayed in the assertion of their claims. Their right to intervene in this case is, under the facts here disclosed, necessarily limited to the satisfaction of their claims out of those damages, the title to the patent being now in the Coach & Car Equipment Corporation. We think it is clear that the reopening of a closed case in bankruptcy rests in the sound judicial discretion of the District Judge and an application for that purpose should be made to him and not to the referee to whom the case was originally referred; that the latter's authority under the original order of reference ceased after he made his report and the case was closed; and that if the District Judge orders the case reopened, he should also enter an order re-referring the case to a referee, who should call a new meeting of the creditors for the appointment of a new trustee. In re Rochester Sanitarium & Baths Co., 2 Cir., 222 F. 22, 23, 26, 27; In re Newton, 8 Cir., 107 F. 429, 431; 6 Remington, § 2980; 1 Collier, p. 172.

It is contended by the defendant that section 70 of the Bankruptcy Act, as amended in 1926, 11 U.S.C.A. § 110, required Small to include his application for a patent as an asset in his list of assets. But that section neither before nor after its amendment required the inclusion of an application as an asset in the list of assets, and the forms prescribed by the Supreme Court for listing assets, neither before nor after the amendment, contained a designation calling for the listing of an application as an asset. But section 7, subd. 8, as amended, 11 U.S.C.A. § 25(8), required the bankrupt to file a schedule of his property, and if an application for a patent is property, which we think it is, it being capable of being assigned and will survive to the applicant's executor or administrator, the forms for listing assets properly should be changed to include such an asset. If this were done it would avoid misleading.

■ The defendant further contends that Small was guilty of fraud in not listing the application as an asset, although the forms did not require it. It is difficult to see how the defendant can raise the question; and if a legally appointed new trustee might do so, we think that, under the facts here existing, it could avail him nothing over and above what he is otherwise authorized to assert, for the legal title to the patent is the property of the Coach & Car Equipment Corporation, and the only assets involved in this suit in which he could assert a right by being allowed to intervene are the damages Small may recover. If the omission to list was fraudulent as to his creditors, it can avail the defendant nothing. Being such it would not confer upon the defendant the right to damage property the title to which was in Small, nor to defeat an action brought against it for damages, in which Small's creditors have an equity, if they have not lost it through unreasonable delay.

■ We think, however, that the permanent injunction issued in this case went too far; that under the so-called license or assignment, granting the exclusive right to manufacture, use, and sell, the Coach & Car Equipment Corporation may employ anyone it sees fit to manufacture the patented article or to use or sell it, and that, while it could not, under a nontransferable contract, such as exists here, grant a sublicense to anyone, it had a right to employ the defendant to manufacture the revolving carseat bases under the Small patent and to sell them, the Coach & Car Equipment Corporation to account to the assignor for all royalties, whether the articles were manufactured, sold, or used by it or by its agent. The injunction issued by the District Court must be modified in this respect.

Equity requires that the suit against the defendant should be retained for the assessment of damages; that the so-called license or assignment to the Coach & Car Equipment Corporation should stand as valid and binding; that any damages recovered against the defendant since the date of the execution of the assignment or license contract, after adjustment between the assignor and assignee of the expenses of the suit, be for the benefit of the Coach & Car Equipment Corporation; and that the damages resulting from the infringement of the patent prior to the assignment to the Coach & Car Equipment Corporation be Small's, subject to any claim a legally appointed new trustee may be able to establish in this suit for the benefit of the creditors, if he desires to intervene and establish a right in them.

The denial of the District Court of the motion of the defendant to vacate the interlocutory decree is affirmed, but the permanent injunction must be modified to conform to this opinion.

The case is remanded to the District Court for further proceedings not inconsistent with this opinion, with costs to the plaintiffs-appellees in this court.

MORTON, Circuit Judge (dissenting).

I regret that I find myself in radical disagreement with my associates on the rather important bankruptcy question involved in this case.

The facts on this point may be briefly stated. Small, the plaintiff, filed an application for the patent in suit in August, 1929. In the following February (February 13, 1930) he filed a voluntary petition in bankruptcy. He scheduled no assets except exempt ones, nor did he ever disclose to his trustee his pending application for the patent. The bankruptcy proceeding and the application for the patent were pending contemporaneously, and from time to time action was taken by Small in each one; he had put a price of $10,000 on his invention and believed it was valuable; it was his only asset; he can hardly have honestly overlooked the application for the patent in his bankruptcy proceedings. The bankruptcy statute expressly provides that "the trustee * * * shall * * * be vested * * * with the title of the bankrupt * * * to all * * * interests in patents * * * and in applications for patents."*

While there is before us no finding that the bankruptcy was fraudulent—the present case did not call for a finding on that point —there is strong prima facie evidence that such was the fact. The bankruptcy case was

disposed of as a no-asset case; the creditors got nothing; and Small received his discharge. The patent was issued to him on 6 October 1931, and he now claims to be the owner of it subject to whatever rights the Coach & Car Equipment Corporation may have under the license from him. In December, 1937, the bankruptcy case was reopened by the referee on the allegation of newly discovered assets, i. e., the patent, and a new trustee was appointed.

My brethren hold that the case was not properly reopened because no application to reopen was made to the District Judge. For more than thirty-five years at least the practice in respect to reopening in this District has been in accord with that followed in this case. In 1903 the soundness of this practice was challenged and it was expressly upheld by the Supreme Judicial Court of Massachusetts. Bilafsky v. Abraham, 183 Mass. 401, 67 N.E. 318. It was also considered and upheld in a careful opinion by referee Olmstead. In re Sonnabend, 18 A. B.R. 117. No doubt concerning it has since been raised as far as appears; it is much the more convenient way to deal with the question. I find myself in agreement with the views expressed by Knowlton, C. J., in the Bilafsky Case. The broad general order of reference which he there considered is still used in substantially the same form. In holding that a case had not been "closed" before the referee unless there had been an honest disclosure of facts, and that when it was made to appear that there were assets which by negligence or fraud had not been administered, the referee had the power to recall and set aside his closing order and to reopen the case, it seems to me that the Bilafsky decision is correct.

In view of the explicit provisions of the statute with reference to applications for

---

* "(a) The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all (1) documents relating to his property; (2) interests in patents, patent rights, copyrights, and trade-marks, and in applications for patents, copyrights, and trademarks: Provided, That in case the trustee, within thirty days after appointment, does not notify the applicant for a patent, copyright, or trade-mark of his election to prosecute the application to allowance or rejection, the bankrupt may apply to the court for an order revesting him with the title thereto, which petition shall be granted, unless, for cause shown by the trustee, the court grants further time to the trustee for making such selection; and such applicant may, in any event, at any time petition the court to be revested with such title in case the trustee shall fail to prosecute such application with reasonable diligence; and the court, upon revesting the bankrupt with such title, shall direct the trustee to execute proper instruments of transfer to make the same effective in law and upon the records." Bankr.Act § 70, as amended, 11 U.S.C.A. § 110.

patents owned by bankrupts, it seems clear that the title to the application was transferred to Small's estate by operation of the Bankruptcy Act. An adjudication in bankruptcy resting on statute has little similarity to "voluntary assignments" referred to in the majority opinion. Of course the failure to schedule does not affect the passing of title under the act. When Small, without scheduling or informing his trustee of his pending application, went ahead and prosecuted the application, which then belonged to the estate, to a successful conclusion, the patent which he received also belonged to his estate; though issued in his name, it was held by him as a bare trustee for the benefit of his estate. It seems to me entirely unimportant on this question whether there was then a qualified trustee in the bankruptcy proceeding; in most cases there is no trustee until some time after adjudication. Nor do I agree with observations in the opinion as to the duty of creditors to be diligent in searching for concealed assets of a bankrupt under penalty of laches if they do not find them promptly. It is the duty of the bankrupt—and a very important one—to schedule his assets and, if any are inadvertently omitted from the schedule, to disclose them to his trustee. There are many decisions emphasizing this duty, and rightly so, because it is one of the main foundations of the bankruptcy system. To suggest that creditors who fail within six years to discover assets which have been fraudulently concealed—as the evidence here indicates —are barred by laches from asserting any claim to them in the bankruptcy proceedings is to make a shorter statute of limitations on this grave fraud on the court than prevails in Massachusetts on ordinary frauds. I may add that I do not consider creditors of a bankrupt guilty of laches for not discovering, among the hundreds of thousands of patents annually issued, that one of them was issued to the bankrupt, nor have they any implied notice of that fact.

The majority opinion leaves Small in complete ownership of the patent, subject only to a trust which he personally is to carry out to pay his creditors. With this disposition of the matter I am unable to agree. No decision is cited in support of such a revolutionary change in bankruptcy administration in favor of fraudulent or negligent bankrupts. The provisions of the statute with reference to the reacquisition of title in an application for a patent by a bankrupt are explicit and controlling. The patent is the property of the estate; and it ought to be administered like any property of a bankrupt, by the trustee for the benefit of the creditors, the surplus of the estate, if any, to be returned to the bankrupt.

It is suggested in the opinion that only two or three claims were proved, that the total amount is not large, and that the royalties which are apparently due exceed the amount of the claims proved. I am unable to see that this affects the matter. Indeed the fact that a debtor went into bankruptcy possessed of property more than sufficient to pay his debts gives added emphasis to the indications of fraud in the bankruptcy proceedings. I think that the trustee should be permitted to intervene in the present case, which was instituted by Small himself, to approve or disapprove it as the interests of the estate may demand, to adopt and prosecute it, if so advised for the benefit of the estate, and to dispose of the equity in the patent above the assignment to the Coach & Car Equipment Corporation as the interests of the creditors or of the bankrupt may require.